UNITED STATES ex rel. Lawrence J. BOSTICK, Petitioner–Appellant,

v.

Howard PETERS, Director, Illinois Department of Corrections, and Michael Furrie, Warden, Taylorville Correctional Center, Respondents–Appellees.

No. 92–3333.

United States Court of Appeals, Seventh Circuit.

Argued May 6, 1993.

Decided Aug. 19, 1993.

Adam Bourgeois (argued), Chicago, IL, for petitioner-appellant.

Bradley P. Halloran (argued), Office of Atty. Gen., Chicago, IL, for respondents-appellees.

Before CUDAHY, COFFEY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

Petitioner Lawrence Bostick brings this action for habeas relief under 28 U.S.C. § 2254, arguing that he was not permitted to litigate fully and fairly his Fourth Amendment claim in state court. The district court denied the writ, holding that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precluded collateral review of his claim. We reverse and remand for a hearing on the merits.

## I.

On September 20, 1984, Bostick arrived at O'Hare Airport on a flight from Fort Lauderdale, Florida. Two undercover narcotics agents, Robert Fulkerson and Larry Johnson, were monitoring the area and noticed Bostick get off the flight from Fort Lauderdale, a "source city" for cocaine. As Bostick walked to the concession area, he made a "vision sweep" of the area. As he walked by, Bostick made eye contact with agent Johnson and the agent followed him. En route through the airport to the baggage claim area, Bostick turned to make eye contact with agent Johnson on a number of occasions. After Bostick walked out of the last set of doors near the baggage claim area, the agents approached him, displayed their badges and identified themselves as federal officers.

The parties dispute what happened next. According to Bostick in his motion to suppress, the agents asked him for his ticket and for some identification. Bostick produced his driver's license, but agent Fulkerson again requested his plane ticket. Bostick replied that he did not have it and that he must have lost it on the plane. Retaining Bostick's

driver's license, Fulkerson asked the petitioner to step inside the terminal building. By his own account, Bostick believed that he could not refuse the request. Agent Fulkerson asked Bostick whether he had just arrived from Fort Lauderdale, what he had been doing in Florida, where and how long he had stayed in Florida, whether the address on the driver's license was current, whether he had purchased the plane ticket in his own name, what he did for a living and whether he was nervous. According to the petitioner, Fulkerson then told him that he did not have to consent to a search but that a search was going to take place whether or not he agreed to it.[1] Bostick responded, "Fine. Go ahead," and Fulkerson searched the petitioner's shoulder bag. No contraband was found in the shoulder bag, and the bag and driver's license were returned. Bostick was then told that he was free to leave.

The testimony of the two agents as to the encounter with Bostick differed from Bostick's story in essentially four respects. First, according to agent Johnson's testimony, agent Fulkerson did not retain Bostick's driver's license but immediately handed it back to the petitioner when he asked for Bostick's plane ticket. Second, the agents purportedly never requested Bostick to reenter the terminal. Third, according to Johnson, Fulkerson told the petitioner that he did not have to consent to the search, and Bostick freely permitted them to search his carry-on bag. Finally, agent Johnson testified that they found a small glass vial in the bag, which he stated is commonly used to snort cocaine.

After Bostick left the scene, agent Fulkerson returned to the baggage claim area and told a Chicago police officer of the encounter. The officer and Fulkerson went to the claim area for the Fort Lauderdale flight and discovered only one suitcase left on the baggage belt. One side of the name tag attached to the suitcase contained the name, "James," with a Woodbridge, Illinois, address, while the other side read, "L. Bostick," with the

---

1. In his memorandum in support of his motion to suppress, however, the petitioner stated that he believed from the tone of the officers' voices

that they would search his bag whether or not he consented to the search.

same Woodbridge address. Fulkerson recognized the Woodbridge address as the one he had observed on Bostick's driver's license. Fulkerson and the police officer took the suitcase to the United Airlines baggage claims office, signed a receipt for the suitcase and conducted a canine sniff test. The dog reacted positively to the suitcase. The officers then secured a search warrant and searched the suitcase; in it they discovered approximately 508 grams of cocaine.

Bostick was charged with possession of a controlled substance with intent to deliver in violation of Illinois Revised Statutes, ch. 56½, ¶ 1401(a)(2) (1983). Prior to trial, Bostick moved to suppress the evidence, arguing that the detention was unlawful and that the cocaine discovered in the suitcase was tainted by the illegal seizure and must be suppressed.

At the March 15, 1985, suppression hearing, Bostick's counsel submitted a sworn affidavit and a memorandum in support of the motion to suppress, presenting Bostick's version of the events we have noted. Bostick's counsel, Mr. Bourgeois, stood ready to put the petitioner on the stand to testify to his version of the events when the following exchange occurred between Judge Strayhorn, Mr. Bourgeois and Mr. Giroti, the Assistant State's Attorney handling the case:

> THE COURT: It is up to you [the state] to go forward. This Petition is sworn to. The allegations of the Petition, you have to meet them.
>
> MR. GIROTI: Pardon me, your Honor?
>
> THE COURT: I said the Petition is sworn to; so you [Bostick] meet the allegations. Sit down, Mr. Bourgeois. No, you don't have to call anybody. The Petition is sworn to, Mr. Bourgeois. Do you want to?
>
> MR. BOURGEOIS: No, I don't.

Suppression Hearing Tr. (March 15, 1985) at 2. The state then called the two agents to testify. On March 18, the court held that the petitioner had been seized and that the agents had not articulated a sufficient basis for the initial stop. It therefore suppressed the suitcase evidence.

The state appealed the suppression order and the appellate court reversed. The appellate court held that Bostick's affidavit was insufficient to satisfy his burden of proving the allegations made in his motion to suppress but was sufficient only to make a preliminary showing that Bostick was entitled to an evidentiary hearing. The court held that the affidavit was not competent evidence to support Bostick's burden of proof, especially since the affidavit was not properly sworn to before an authorized person. The appellate court noted that the defendant's story in his affidavit and memorandum contradicted agent Johnson's testimony, but concluded that the

> defendant failed to offer any evidence on the circumstances of his initial encounter with agents Johnson and Fulkerson. He failed to present any facts showing that the officers retained his driver's license. He failed to present any facts showing that agent Fulkerson stated or intonated the search would take place whether or not defendant consented.... In short, defendant adduced no evidence whatsoever from which the trial court could have concluded that there had been a seizure of defendant.

*People v. Bostick,* 152 Ill.App.3d 1163, 113 Ill.Dec. 907, 515 N.E.2d 1066 (1st Dist.), *leave to appeal denied,* 116 Ill.2d 563, 113 Ill.Dec. 305, 515 N.E.2d 114 (1987). The appellate court then accepted the unrebutted testimony of the agents and determined, on their version of the facts, that Bostick had not been seized. Consequently, since there had been no seizure, the agents had not been required to articulate a reasonable suspicion that Bostick was committing a crime.

Back in the trial court, Bostick asked for another hearing in which to proffer his testimony to substantiate the allegations in his motion to suppress. But, based on the appellate court opinion, the trial court held that Bostick was not entitled to another evidentiary hearing. The following colloquy took place:

> MR. BOURGEOIS: Your ruling, does it also mean that we are not able to offer only the Defendant's testimony on the motion?

THE COURT: No, it means that there is no additional evidence that the Court feels is required. The Court feels if there is another evidentiary hearing the only thing that the Court would hear that is different from the original would be the testimony of the Defendant.

And I already have that testimony based upon the sworn petition that the Petitioner signed.

MR. BOURGEOIS: Judge, does that also include an offering, where the Appellate Court in the Opinion talks about the contradictory testimony between the agent and the Defendant's sworn statement?

THE COURT: You read the Opinion just as I did. And I offer no opinion as to that. That is what they wrote. That is what I read. That is what you read. And they sent it back to hear this trial.

Trial Tr. at 4–5.

The case proceeded to a bench trial in which the suitcase evidence was admitted and Bostick was convicted. As part of a new trial motion, Bostick renewed his request for a second suppression hearing to submit testimony to substantiate his version of the events. Bostick's request was denied and he was sentenced to ten years in custody.

Bostick appealed, and the appellate court affirmed his conviction together with the denial of a second suppression hearing, holding that there was no additional evidence or exceptional circumstance warranting reconsideration of the issue, and that Bostick should have submitted his evidence at the first hearing. *People v. Bostick,* 211 Ill.App.3d 1103, 184 Ill.Dec. 236, 613 N.E.2d 6 (1st Dist.1991) (unpublished order). Leave to appeal to the Illinois Supreme Court was denied. *People v. Bostick,* 141 Ill.2d 546, 162 Ill.Dec. 495, 580 N.E.2d 121 (1991).

On December 13, 1991, Bostick filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, arguing that the use of the evidence found in the suitcase violated his Fourth Amendment rights and that the state did not afford him an opportunity to litigate the issue fully and fairly. Bostick contends that he reasonably relied on the trial court's ruling that his testimony was not necessary to substantiate his motion to suppress. When that ruling turned out to be erroneous, Bostick was then denied an opportunity to present his testimony.

The district court concluded that collateral review of Bostick's Fourth Amendment claim was precluded under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The court held that Bostick had an opportunity to litigate his claim in state court because the trial court's ruling did not prevent Bostick from testifying at the hearing. When given the opportunity, the district court noted, Bostick chose not to call any witnesses. The district court also found that exceptional circumstances did not justify a second suppression hearing, and therefore, denied the writ. *Bostick v. Peters,* No. 91–C7859, 1992 WL 199081, 1992 U.S.Dist. LEXIS 11835 (N.D.Ill. August 6, 1992).

## II.

In *Stone v. Powell,* the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494, 96 S.Ct. at 3052. The Court determined that, where the state courts have addressed a defendant's Fourth Amendment claim, the costs of applying the exclusionary rule on collateral review outweigh the modest benefit of marginally deterring future Fourth Amendment violations. *Id.* at 493, 96 S.Ct. at 3052. The essential premise in the Court's analysis was the presumption that state courts take Fourth Amendment claims seriously. For if the state courts do not adequately address these claims, the benefits associated with collateral review are not "marginal." Indeed, if Fourth Amendment claims fall on deaf ears in the state courts and defendants are then precluded from raising their claims on collateral review, the efficacy of the exclusionary rule in deterring future Fourth Amendment violations would be undermined.

In deciding whether the state has afforded the petitioner an opportunity for full and fair litigation, a federal habeas court must determine first whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, there must be a determination whether the presentation of the claim in question was in fact frustrated by a failure of that mechanism. *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.), *cert. denied sub nom., Shoemaker v. Riley,* 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982). The presentation of a claim is frustrated by a failure in the state procedural mechanism if there has been no "meaningful inquiry by the state courts"[2] into the Fourth Amendment claim, either because the state courts did not carefully and thoroughly address the factual basis of the petitioner's claim or because the state courts did not apply the proper constitutional case law to the facts as developed. *See Pierson v. O'Leary,* 959 F.2d 1385, 1391 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992); *cf. Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (noting circumstances when litigant does not receive full and fair hearing in state court; cited with approval in *Stone,* 428 U.S. at 494 n. 36, 96 S.Ct. at 3053 n. 36). Of course, the petitioner is not denied an opportunity for full and fair litigation of his claim if he fails to raise and to preserve the claim in state court. *United States ex rel. Maxey v. Morris,* 591 F.2d 386, 388–89 (7th Cir.), *cert. denied,* 442 U.S. 912, 99 S.Ct. 2828, 61 L.Ed.2d 278 (1979). *See generally* Janet Boeth Jones, Annotation, *What Constitutes "An Opportunity for Full and Fair Litigation" in State Court Precluding Habeas Corpus Review Under 28 U.S.C. § 2254 in Federal Court of State Prisoner's Fourth Amendment Claims,* 75 A.L.R. Fed. 9 (1985).

There is no question that Illinois' mechanism for the resolution of Fourth Amendment claims does afford, in the abstract, defendants the opportunity to raise their Fourth Amendment claims. Bostick

argues, however, that this mechanism was frustrated when he reasonably relied on the trial court's ruling that his testimony was not necessary for the effective presentation of his motion to suppress and, after that ruling was reversed, he was subsequently prevented from ever introducing his testimony. Although neither we nor Bostick are able to find any cases directly on point, Bostick refers us to *Riley v. Gray,* 674 F.2d at 522, as a case analogous to this one. In *Riley,* the petitioner argued before the state appellate court that evidence used at trial should have been suppressed because this evidence had been secured under a warrant based on evidence obtained from a warrantless search. The appellate court ruled that the defendant did not have standing to challenge the evidence, even though the state did not contest standing and neither party briefed or argued the issue. Concluding that there was no evidence supporting the petitioner's standing to challenge the search, the appellate court held that it could not rule on the merits of the claim. Instead of remanding for a determination whether the defendant had standing, however, the appellate court simply affirmed the conviction.

Thereafter, in his habeas action, the petitioner argued that he had been denied an opportunity for full and fair litigation of his Fourth Amendment claim because he had never been permitted to establish his standing to challenge the search. The district court granted the writ and the Sixth Circuit affirmed. The court of appeals held that the petitioner could have established his standing to challenge the search had he anticipated the appellate court's ruling, but that requiring him to foresee the need for such a showing would be unreasonable. *Id.* at 527. The appellate court's failure to remand the case to give the defendant a chance to establish standing, therefore, denied Riley an opportunity for full and fair litigation of his claim. As the Sixth Circuit summarized:

> We hold that federal habeas relief is available when a criminal defendant is not allowed to fully present his fourth amend-

---

2. Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76  Harv.L.Rev. 441, 457 (1963).

ment claim in the state courts because of unanticipated and unforeseeable application of a procedural rule which prevents state court consideration of the merits of the claim.

*Id.*

The district court found *Riley* to be inapplicable to the present case on the grounds that *Riley,* unlike this case, involved an issue of standing; that Riley, unlike Bostick, did not have an opportunity to litigate his claim; and that the state court in *Riley,* unlike here, did not address the petitioner's constitutional claim. Although the case before us does not involve standing, we do not agree that the Sixth Circuit's reasoning in *Riley* is inapplicable here. It is clear that, as in *Riley,* Bostick's factual allegations were never considered on the merits. "There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." *Townsend,* 372 U.S. at 313–14, 83 S.Ct. at 757. After the state appellate court noted that Bostick's story conflicted with that of the agents and that the defendant's affidavits should not be considered as support for the motion to suppress, the court did not expressly remand the case to permit Bostick to testify in support of his claim. Instead, the appellate court simply reviewed the record in the absence of the affidavits and concluded that, based simply on the testimony of the agents, the suitcase evidence was admissible. On remand, moreover, when Bostick attempted to testify in support of his motion to suppress, the trial court interpreted the appellate court decision as disposing of Bostick's claim on the merits. Consequently, according to the trial court, a hearing to admit Bostick's testimony was not appropriate.

The state argues that Bostick was given an opportunity before Judge Strayhorn to litigate his claim and that he chose not to support his allegations with competent evidence. According to the state, there was nothing precluding Bostick's counsel from offering testimony to substantiate the motion to suppress. Indeed, after telling Mr. Bourgeois to sit down and that Bostick's testimony would not be necessary, Judge Strayhorn asked Mr. Bourgeois whether he wanted to put any witnesses on the stand. The state contends that this opportunity is all that *Stone* requires, and that it was Mr. Bourgeois' failure to make a record that prevented Bostick's claim from being considered.

But the state's contentions do not address the practical realities of the situation. In *Riley,* the Sixth Circuit noted that "requiring [the defendant] to anticipate the need to prove his standing in the trial court would be unreasonable." 674 F.2d at 527. So too here. In the face of the trial court's express ruling that no testimony was necessary, it would be unreasonable to require Bostick's counsel to attempt to present testimony in anticipation that Judge Strayhorn would be reversed. At least, such a requirement would be unreasonable if it meant that the client, a criminal defendant, would have to take the stand. In these circumstances, a party may rely on a trial court's favorable ruling, and is not required in effect to question the judge's probity by attempting to insist on an "unnecessary" procedure.

In *Espinoza v. INS,* 991 F.2d 1294 (7th Cir.1993), we were confronted with a similar situation in which a party relied to his ultimate detriment on a judge's ruling. There, a deportable alien applied for a waiver of deportation, which the Immigration Judge (IJ) granted. On appeal, however, the Board of Immigration Appeals (BIA) reversed on the ground that Espinoza had not established genuine rehabilitation (necessary for such a waiver) because he had waited almost two years before starting a drug rehabilitation program. We vacated the BIA's decision and remanded for further evidence because the record did not indicate the reason for the two-year delay. This evidence had not been offered originally because the IJ had specifically stated that the reason for the delay was not important and that it would have no impact on his decision. In arguments strikingly similar to those presented by the state here, the INS contended that the IJ had not precluded Espinoza from submitting evidence explaining the delay and that Espinoza had made a tactical decision not to submit such evidence. We rejected those arguments:

From our review of the record, we consider it reasonable for Espinoza and his counsel to have relied on the IJ's comment that specific evidence of when he first sought entry into the drug program was insignificant. In reliance on the IJ, who ruled in his favor, Espinoza did not present any further reasons for waiting nearly two years to enter the drug program. Then, on review by the BIA, Espinoza was blindsided by the ruling that he delayed enrolling in the drug program first, an issue the IJ had determined to be insignificant. Espinoza certainly is entitled to have an opportunity to make this potentially important evidence part of the record of the deportation proceeding.

*Id.* at 1300.

There may be cases, of course, when a party's reliance on a court's ruling is not warranted. A party who knows that the ruling is clearly wrong yet fails to bring the error to the court's attention, for example, could hardly claim reasonable reliance on the ruling. But that is certainly not the situation here. There was nothing to indicate that the ruling was erroneous. Substantiating a claim with a sworn affidavit, albeit not notarized, would not strike a reasonable trial counsel as improper. In fact, if the use of affidavits in this way was generally thought improper at the time, the state presumably would have objected to the court's ruling. But the state did not contest the decision and immediately called its witnesses to the stand. Nor did the state challenge the ruling on appeal. This acquiescence in the ruling belies the state's contentions that Bostick's counsel is somehow to blame for failing to take steps to preserve the record. For had the state objected, the trial court could have reconsidered its decision or, to dispose of the objection, Bostick could have simply taken the stand. But the state was silent.

### III.

As was the case in *Riley*, the unanticipated and unforeseeable application of a rule on appeal prevented the state courts from properly considering the merits of the petitioner's claim. This failure in the state's procedural mechanism for addressing Fourth Amendment challenges denied Bostick the opportunity for full and fair litigation of his claim. The district court, therefore, was not prevented from exercising habeas jurisdiction under *Stone* and we accordingly reverse and remand to the district court for a hearing on the merits of the petitioner's Fourth Amendment claim.

REVERSED AND REMANDED.

