UNITED STATES ex rel. Lawrence
J. BOSTICK, Petitioner,

v.

Howard PETERS, Director, Illinois
Department of Corrections, et
al., Respondents.

No. 91 C 7859.

United States District Court,
N.D. Illinois, E.D.

Jan. 26, 1994.

Edward M. Genson, Genson, Steinbeck & Gillespie, Adam Bourgeois, Sr., Chicago, IL, for petitioner.

Timothy C. Reynolds, Bradley P. Halloran, Asst. Attys. Gen., Illinois Atty. General's Office, Chicago, IL, for respondents.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

HART, District Judge.

### I. Introduction

Petitioner Lawrence Bostick was convicted in the Circuit Court of Cook County, Illinois of possession of controlled substance with intent to deliver. Initially, a state court suppressed evidence offered against him. On appeal, the suppression order was reversed. *People v. Bostick*, 152 Ill.App.3d 1163, 113 Ill.Dec. 907, 515 N.E.2d 1066 (1st. Dist.) (unpublished order), *leave to appeal denied*, 116 Ill.2d 563, 113 Ill.Dec. 305, 515 N.E.2d 114 (1987). Thereafter, petitioner was convicted at a bench trial, and the conviction was upheld on appeal. *People v. Bostick*, 211 Ill. App.3d 1103, 184 Ill.Dec. 236, 613 N.E.2d 6 (1st Dist.), *leave to appeal denied*, 141 Ill.2d 546, 162 Ill.Dec. 495, 580 N.E.2d 121 (1991). Petitioner initiated federal habeas corpus proceedings pursuant to 28 U.S.C. § 2254. The United States Court of Appeals for the Seventh Circuit held that state review of the petitioner's Fourth Amendment claim was deficient, in that petitioner was denied the opportunity to testify in support of his version of an encounter with drug enforcement officers after the suppression order was reversed. The Court of Appeals held that Bostick could present his Fourth Amendment claim in a federal habeas corpus petition because the state court had not afforded him an opportunity for full and fair litigation of that issue. *United States ex rel. Bostick v. Peters*, 3 F.3d 1023 (7th Cir.1993). The case was remanded to this court for a hearing on the merits of petitioner's Fourth Amendment claim at which he would be permitted to testify.

Factual issues are presented. Bostick arrived at O'Hare Airport on a flight from Fort Lauderdale, Florida. Two undercover narcotics agents monitored the arrivals. Bostick was approached by them as he was leaving the terminal. An issue is presented as to whether the ensuing interview was consensual or whether it was an investigatory stop— requiring articulable suspicion. After answering some questions and submitting to a search of a carry-on bag, Bostick left the terminal without obtaining the remainder of his luggage. What the agents learned during their conversation led them to subject Bostick's unclaimed luggage to a canine sniff. If this information was properly obtained, did it provide articulable suspicion sufficient to seize his luggage in order to subject it to a canine sniff? An issue also exists as to whether Bostick abandoned his luggage when he left the terminal.

As a result of a trained dog's positive reaction for drugs, a warrant to search Bostick's luggage was obtained. The search revealed over 500 grams of cocaine. No argument is made that the time of initial detention of the luggage was excessive or that the warrant was improperly issued.

The case is now before the court after an evidentiary hearing for entry of findings of facts and conclusions of law.

## I. FINDINGS OF FACT

Based on the testimony of Agent Johnson, Agent Fulkerson, police officer James Grady, and the petitioner and the Illinois State court record, the court finds the facts to be as follows:

1. On September 20, 1984 at 11:25 a.m., Bostick arrived at Chicago O'Hare Airport on United Airlines flight 419 from Fort Lauderdale, Florida. Fort Lauderdale, Florida is a source city for narcotics. DEA agents Johnson and Fulkerson, dressed in street clothes, observed passengers deplaning. Petitioner was dressed casually and carried a dark colored bag. Bostick looked around the area in a sweeping manner. He was observed to enter a washroom and a concession area, but surveillance was lost for a brief interval. Bostick made eye contact with Johnson at some point. The agents followed. Bostick walked toward the baggage carousel and then started out of the terminal. The agents called to him as he was leaving the second set of double exit doors. They identified themselves and asked if they could speak with him. Bostick indicated that he would talk to the agents and reentered the vestibule. No weapons were displayed. All of the conversations took place in the same public area and the interview lasted approximately five minutes. Bostick testified that his back was against a radiator, that he could not proceed without running into the agents, and that he did not believe he was free to leave. Notwithstanding Bostick's testimony, which conflicts with that of the agents, he was not detained. Neither by express statement nor conduct did the officers indicate that Bostick was not free to go. The interview was consensual.

2. Agent Fulkerson asked Bostick if he had any identification with him. Bostick produced an Illinois driver's license. Fulkerson asked Bostick if he had his airline ticket, to which Bostick replied that he did not have it. Bostick was asked if he had any luggage, and he denied having any. In fact, he checked two bags. Bostick was asked if he traveled under his own name. He responded "Yeah, yeah, I think I did." In fact, Bostick did not travel under his own name, as the agents determined from airline records of the flight.

3. Agent Fulkerson asked Bostick how long he had been in Florida, to which he replied a few days. In response to a question from Agent Fulkerson, Bostick stated that he was not employed.

4. Request was made by Agent Fulkerson to search the bag Bostick was carrying. Bostick was told that he did not have to consent. Bostick testified that he was told that his bag would be searched whether he gave consent or not. As noted by the Court of Appeals, *Bostick*, 3 F.3d at 1024 n. 1, in his memorandum in support of his motion to suppress, he stated that he believed from the tone of the officers' voices that they would search his bag whether or not he consented to the search. He gave permission to search his bag.

5. The agents said that they saw a small vial similar to a device used to inhale cocaine. Bostick testified that the only glass container in his bag was a doctor's sample of cough syrup. The bag was returned to Bostick.

6. After Bostick left the terminal, the agents returned to the luggage area where they saw luggage tags with his name and address. The agents gave a receipt for his bag and, at approximately 11:45 a.m., subjected it to a canine sniff. As a result of the positive reaction of the trained dog, a search warrant was obtained to search Bostick's luggage.

7. Bostick testified that after the agents left, he stayed in front of the terminal for five or ten minutes to "cool down" and then went to the claim area to obtain his luggage. He stated that he saw his scuba bag, but his second bag was missing. He testified that he then took a taxicab home. It is not credible

that a person interviewed by law enforcement agents who were looking for controlled substances would return to retrieve luggage containing controlled substances after having declared that he did not have luggage of any kind and after having once left the luggage area without attempting to recover such luggage even before being interviewed. At the time of his arrest, after being advised of his right to remain silent, Bostick told an arresting officer that he just left his luggage at the airport. Bostick abandoned his luggage at the airport.

## II. CONCLUSIONS OF LAW

 The Seventh Circuit has described three categories of encounters that implicate Fourth Amendment rights. The first category is an arrest for which probable cause is required. The second is an investigatory stop, which is limited to a brief, non-intrusive detention. For such a stop an officer must have sufficient and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment. *United States v. Johnson,* 910 F.2d 1506, 1508 (7th Cir.1990), *cert. denied,* 498 U.S. 1051, 111 S.Ct. 764, 112 L.Ed.2d 783 (1991); *United States v. Withers,* 972 F.2d 837, 841 (7th Cir.1992). A consensual encounter can become an investigatory detention as a result of police conduct indicating a person is no longer free to leave. *United States v. Sterling,* 909 F.2d 1078, 1083 (7th Cir.1990).

A detention of luggage for a short period of time to subject that luggage to a canine sniff is in the second category of seizures that requires an articulable suspicion. *See United States v. Place,* 462 U.S. 696, 706–07, 103 S.Ct. 2637, 2643–45, 77 L.Ed.2d 110 (1983).

Based on the evidence presented at the hearing and the findings stated in this order, it is concluded that the interview conducted of petitioner was in fact consensual and did not result in a seizure of his person within the meaning of the Fourth Amendment. *Cf. Johnson,* 910 F.2d at 1509. Further, it is concluded that as a result of the interview and the facts learned about petitioner's travel, the officers had an objective articulable suspicion sufficient to authorize the detention of Bostick's luggage for a canine sniff. *Cf. id.* at 1509–10. Moreover, it appears that Bostick abandoned his luggage at the airport so that no question exists as to the reasonableness of the manner or time of this detention. *See United States v. Lee,* 916 F.2d 814, 818 (2d Cir.1990); *United States v. Rem,* 984 F.2d 806, 811 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

Having found that no Fourth Amendment right was violated by the presentation of evidence in this case, suppression must be denied, and the petition for a writ of habeas corpus must be denied.

IT IS THEREFORE ORDERED that the Clerk of the Court enter a judgment denying the petition for a writ of habeas corpus.