UNITED STATES of America, Appellee,

v.

Jose Maria SOTO–LOPEZ, Appellant.

No. 92–2554.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1993.

Decided June 4, 1993.

Helene B. Greenwald, Asst. U.S. Atty. (argued), Chicago, IL (Fred Foreman, U.S. Atty., Gregory T. Mitchell, Asst. U.S. Atty., on the brief), for appellee.

Arturo Hernandez–Melendez (argued), San Jose, CA, for appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

* The Honorable William H. Timbers, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

TIMBERS, Senior Circuit Judge.

Appellant Jose Maria Soto–Lopez appeals from his conviction, after a bench trial, of possession with intent to distribute cocaine pursuant to 21 U.S.C. § 841(a)(1) (1988). Appellant moved to suppress the evidence obtained after he was questioned by agents at the airport, claiming that he was subject to an investigative stop without reasonable suspicion. The motion was denied. He was tried and found guilty. The court imposed a two-level enhancement of his sentence for obstructing justice at the suppression hearing. On appeal, appellant claims that the court erred in denying his motion to suppress, lacked sufficient evidence to convict, and erred in enhancing his sentence.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Appellant was a passenger on a flight from San Jose, California, to Chicago's O'Hare Airport on June 7, 1990. DEA Agent Robert Irwin and Chicago Police Detective Richard Crowley were at the airport that day as part of a combined federal and local attempt to seize drugs smuggled into Chicago. They were assigned to monitor flights arriving from "source cities", one of which was San Jose.

As appellant deplaned, Irwin and Crowley were observing passengers on the main concourse of the terminal. They particularly noticed appellant because of what was described in the agents' testimony as his "flashy" appearance. He was wearing a San Francisco 49er's jacket, a pair of designer blue jeans with a large silver buckle, a western-style shirt, snakeskin boots, a gold chain or two around his neck, and a large gold watch. The agents observed him looking around the gate. He seemed unusually nervous. His actions aroused the agents' suspicion. They watched appellant leave the gate area and noticed that he looked over his shoulder. Appellant stopped at a row of newspaper vending machines. The agents approached him.

They asked if he would answer a few questions. They told him that he could leave at any time during the conversation. They informed appellant of their credentials as law enforcement agents, and told him that he was not under arrest. Appellant agreed to remain and answer question asked by the agents. They questioned him in English, although Spanish is his first language. He does not speak English very well, but he understood their questions and responded in English. He told them his name and that he had just gotten off a flight from California. The agents asked if they could see his ticket. He handed it to one of the agents, who noticed that it was a one-way ticket to Chicago, issued to appellant in San Jose. The agent also noticed appellant's hand shaking as he handed the ticket to him. Stapled on the inside of the ticket envelope was a baggage claim check. One agent read the baggage claim check aloud so the other could write it down for further investigation. After looking at the ticket, the agent returned it to appellant.

The agents asked appellant a series of questions about his trip to Chicago. He stated that he was unemployed, had no money, and came to Chicago to look for work as an auto repair mechanic. He said that he planned to stay in Chicago for one week, and that he bought the $556.00 ticket with a credit card. The agents also asked to see appellant's identification. He gave them his California driver's license and a resident alien card. According to the agents, they were both immediately returned to appellant. While talking with appellant, one agent read aloud the information on the ticket so the other agent could write it down for further investigation.

The agents then informed appellant that they were conducting an investigation of narcotics trafficking at the airport and asked if he was transporting drugs. Appellant replied that he was not. He voluntarily allowed the agents to search his carry-on bag. The agents asked appellant if he had any other luggage. He replied "no", but became noticeably nervous. The agents allowed ap-

pellant to proceed on his way, but they followed him. He went to the baggage claim area of the airport. One of the agents went behind the baggage carousel and looked for the piece of luggage which matched the claim check number he had written down. He located the piece of luggage. Without disturbing it, he went back to observe appellant.

Appellant was speaking with another Hispanic man at the baggage claim area. They were both looking around. After they spoke, appellant left the airport without the luggage. The other man remained until he made eye contact with one of the agents. Then he too left. The luggage was left on the carousel. No one else claimed it. The agents took the luggage to a DEA office within the airport and arranged for a narcotics dog to sniff it. The dog reacted violently and ripped it. A search warrant was obtained. Once opened, the agents discovered ten wrapped kilogram size packages of cocaine in the luggage.

Appellant was indicted on October 30, 1990 for knowingly and unlawfully possessing with intent to distribute approximately 10,049 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Appellant was not present at the arraignment. A bench warrant was issued for his arrest. He was arrested in California on October 2, 1991. The case was removed to the Northern District of Illinois on October 22, 1991 where he was arraigned and pleaded not guilty.

On February 18, 1992, appellant filed a motion to suppress evidence, claiming that he was detained and questioned unlawfully by the agents in violation of the Fourth Amendment. He said that he found it difficult fully to express himself in English, and that, when the agents asked if he minded answering a few questions and he responded "yes", he meant yes, he did mind. Appellant acknowledged that he was told that he was free to leave, but, since there was an agent on either side of him, he did not feel that he really could go. He denied having luggage on the flight or having a baggage claim check.

The court denied appellant's motion. The parties stipulated that the evidence adduced at the suppression hearing would stand as trial evidence. After a bench trial, the court found appellant guilty of the one count charged in the indictment. The court sentenced him to 151 months, to be followed by five years supervised release. The sentence included a two-level enhancement for obstruction of justice based on the court's finding that appellant did not testify truthfully when he said at the suppression hearing that he had no luggage with him other than the carry-on bag.

On appeal, appellant claims that the court erred in denying his motion to suppress and not finding that he was illegally detained in violation of the Fourth Amendment. He also asserts that there was insufficient evidence to convict him on the possession charge. He contends that the court erred in imposing the two-level enhancement of his sentence. For the reasons that follow, we reject his contentions and affirm the judgment.

## II.

### (A) *Motion to Suppress*

We are limited in our review of the denial of a motion to suppress. We can overturn the court's decision only if it was clearly erroneous. *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990).

Appellant asserts that here the court erred in finding the incident at the airport a consensual encounter and not a detention—a critical error in that a detention requires that the officers must have reasonable suspicion to detain a suspect. *Terry v. Ohio*, 392 U.S. 1, 26–27 (1968). What has become known as a *"Terry"* stop differs from a brief consensual encounter, from which a reasonable person would feel free to walk away, since an officer need not have any level of suspicion for a consensual encounter. *Florida v. Bostick*, 111 S.Ct. 2382, 2386 (1991); *United States v. Williams*, 945 F.2d 192, 196 (7th Cir.1991); *United States v. Serna–Barreto*, 842 F.2d 965, 966 (7th Cir. 1988).

Appellant claims that the facts show that his encounter was not consensual, but was a *Terry* stop, requiring reasonable suspicion. *Williams, supra*, 945 F.2d at 195. He

claims that he was stopped in an isolated area and was facing a wall throughout the entire encounter. This, he says made him feel compelled to remain and accordingly he was detained. We disagree.

The court's finding that the incident took place in a public area is not clearly erroneous. The facts are that the area where he was stopped was directly across from the gate in the main terminal. As in *Florida v. Royer*, 460 U.S. 491, 497 (1983), when an officer questions an individual who is willing to answer in a public place, the encounter does not rise to a seizure. Although appellant claims the area was isolated, there were people passing in the general vicinity, as appellant concedes.

■ Appellant further claims that when the agents took his plane ticket and identification, the incident escalated from what arguably began as a consensual encounter into a *Terry* stop. *United States v. Borys*, 766 F.2d 304, 310 (7th Cir.1985) (retention of airline ticket and driver's license is critical factor in turning a consensual encounter into a stop), *cert. denied*, 474 U.S. 1082 (1986). The facts of this case, however, do not support his claim. While in *Borys* we stated that "retaining airline tickets and driver's licenses has been a crucial factor in finding that a seizure has occurred", we held that, when an officer merely *glances* at a ticket, it does not amount to a seizure. *Borys, supra*, 766 F.2d at 310.

In the instant case, the court found that the agents returned the ticket and identification immediately after looking at them. Appellant does not assert that the agent did anything but examine the documents before he returned them. While the fact that one agent took notes as the other agent read the information aloud may require this review of the identification to be more than the "glance" in *Borys*, it clearly does not rise to the level of the case where agents, while holding a plane ticket and a driver's license, asked defendants to follow them to another room. *Royer, supra*, 460 U.S. at 501. The instant case did not rise above the level of a consensual encounter. Appellant was not deprived of his ticket or identification for an unusual length of time, nor was he taken to an isolated area while the agents had his documents.

Although appellant claims that he has a poor understanding of English and was unable to understand the complex nature of his constitutional rights, the court found, based on testimony of others, that his English was good enough to understand the statements that he was free to go and that he did not have to answer any questions. There is no evidence to dispute this finding. Nor is there any indication that appellant was held against his will or that his answers were anything but voluntary. The court did not err in its finding that the incident was merely a consensual encounter requiring no level of suspicion for the agents to question appellant. He voluntarily chose to remain and answer their questions.

We hold that he cannot now be heard to say that his Fourth Amendment rights were violated.

### (B) *Sufficiency of Evidence*

■ Appellant challenges the sufficiency of the evidence. When raising such a challenge, an appellant has a very heavy burden, as "we deny such claims if, 'after viewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " *United States v. Duarte*, 950 F.2d 1255, 1259 (7th Cir.1991), *cert. denied*, 113 S.Ct. 174 (1992) (quoting *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984) (in turn quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). Appellant therefore must prove that there was no evidence on which the court could have based its factual determination. *Brandom v. United States*, 431 F.2d 1391, 1400 (7th Cir.1970), *cert. denied*, 400 U.S. 1022 (1971). We hold that appellant has failed to carry this heavy burden.

■ To sustain a conviction under 21 U.S.C. § 841(a)(1), there must be a showing of knowledge or intent to possess with intent to distribute a controlled substance. The

possession element can be established with constructive possession if the government shows that the defendant *could* control the narcotics and possessed them. *United States v. Navarez*, 954 F.2d 1375 (7th Cir. 1992). Appellant claims that the government never proved that he had constructive possession of the luggage containing the drugs, or, assuming *arguendo* that he did, there was no proof that he had knowledge of its contents.

■ Appellant's problem with the possession argument basically hinges on the fact that the government never introduced in evidence the baggage claim check to the luggage, and there was nothing in the luggage which identified appellant as the owner. Viewing the evidence in the light most favorable to the government (as is required under *Duarte, supra*, 950 F.2d at 1259), however, it was reasonable for the court to connect appellant with the luggage and to find constructive possession. The luggage arrived on appellant's flight. The claim check which the agents testified was attached to appellant's ticket matched the check on the luggage (and the reason it was not introduced in evidence was because the agents returned the ticket to appellant). The luggage had a label which read J. Soto. Finally, before he left the terminal, appellant went to the baggage claim area and remained there, despite the fact that he said he had no luggage. The luggage involved remained on the baggage carousel, unclaimed. This evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that appellant had constructive possession of the luggage containing the cocaine. *United States v. Ocampo–Guarin*, 968 F.2d 1406, 1410 (1st Cir. 1992) (possession of baggage claim tickets was sufficient for finding constructive possession).

■ Appellant further contends that there was no evidence to show he had knowledge of the contents of the luggage—a required element of the crime. There were no fingerprints found on the luggage, nor anything else to connect him with the contents. The evidence which connects him with the luggage, however, was sufficient for a reasonable trier of fact to determine that he had

knowledge of its contents. There was testimony that the baggage claim check attached to his ticket matched the check on the luggage. Appellant, despite his claim that he did not have luggage, went to the baggage claim area. Instead of merely passing through it to leave the airport, he remained in the area. Finally, after he left without luggage, the luggage that matched his claim check remained on the baggage carousel unclaimed.

We hold that the above evidence was sufficient to support the verdict.

### (C) *Enhancement of Sentence*

■ Appellant also claims that the court erred in enhancing his sentence by two levels. When a defendant is sentenced under the guidelines, due deference must be given to the district court's finding of facts. The sentence will be upheld unless the findings are clearly erroneous. U.S.S.G. § 3C1.1, which provides for enhancement of a sentence by two levels for obstructing justice, is applicable when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense...." Appellant claims that the court's determination that his testimony was false does not mean he willfully perjured himself. He says he merely told his version of the facts, which should not be a basis for the application of this provision.

The court found, however, that appellant lied under oath at the suppression hearing, claiming that the luggage was not his and that he did not have the baggage claim check. The enhancement was based on this perjured testimony, which, if accepted, could have resulted in appellant's being acquitted, and thus to have obstructed justice. "All that the district court must do is make a specific, independent finding that defendant was less than truthful when he testified." *United States v. Easley*, 977 F.2d 283, 286 (7th Cir.1992). In the instant case, the court based its finding on the testimony of the agents which it believed, contrasted with appellant's testimony which it did not believe. Under *Easley*, that is enough for a specific,

independent finding not to be clearly erroneous. *Id.* at 286–87. As *Easley* held, "The district judge [is] ... in the best position to evaluate [a defendant's] truthfulness...." *Id.*

We hold that the court's finding will not be disturbed and the two-level enhancement is affirmed.

### III.

To summarize:

The district court properly denied the motion to suppress evidence. There was sufficient evidence on which to base a conviction. The two-level enhancement of appellant's sentence was not based on a clearly erroneous finding.

AFFIRMED.