46 F.3d 1133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lawrence J. BOSTICK, Petitioner-Appellant,
v.
Howard A. PETERS, III, Director, Illinois Department of
Corrections and Michael Furrie, Warden,
Taylorville Correctional Center,
Respondents-Appellees.
 No. 94-1642.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 4, 1994.
Decided Jan. 18, 1995.
 
 Before CUMMINGS, PRATT* and MANION, Circuit Judges.
 
 ORDER
 
 1
 After a search of his luggage at O'Hare Airport, Lawrence J. Bostick ("Bostick") was arrested and ultimately convicted in the Circuit Court of Cook County, Illinois, for possession with intent to distribute over 30 grams of cocaine. Having pursued his state court appeal without success, Bostick filed a petition for habeas corpus under 28 U.S.C. Sec. 2254. In his petition, Bostick alleged that law enforcement officials violated his Fourth Amendment rights in connection with their seizure of the cocaine that resulted in his conviction. After conducting an evidentiary hearing the district court denied the petition. We affirm.
 
 I. Facts
 
 2
 On September 20, 1984, Bostick flew from Fort Lauderdale, Florida to Chicago, Illinois. He deplaned at Chicago's O'Hare airport from United Flight 419 and proceeded down the concourse towards the baggage claim area. As he did so, Bostick was observed by agents Larry Johnson ("Johnson") and Robert Fulkerson ("Fulkerson") who were members of a Drug Enforcement Agency ("DEA") task force conducting surveillance at O'Hare airport that day. The task force was monitoring passengers arriving from cities that are known sources for narcotics. Fort Lauderdale, Florida is one such "source city."
 
 
 3
 Bostick's behavior aroused the suspicion of agents Johnson and Fulkerson because, upon deplaning, he scanned the concourse as if checking for surveillance. He also fit the DEA's drug courier profile. For these reasons, Johnson and Fulkerson began following Bostick down the concourse. Bostick first entered a washroom and then proceeded toward the baggage claim area. At some point, Bostick made eye contact with agent Johnson. And, although he had been proceeding toward the baggage carousel, he abruptly started toward the double doors leading out of the terminal.
 
 
 4
 Johnson and Fulkerson followed Bostick through the first set of doors and called to him as he exited the outer doors. When Bostick paused, Johnson and Fulkerson, who were in plain clothes and had their weapons and credentials concealed, identified themselves and asked if they could speak with him. Bostick agreed to talk with the agents and reentered the vestibule.
 
 
 5
 The ensuing conversation took place in the vestibule and lasted about five minutes. During the conversation, Johnson and Fulkerson stood alongside Bostick, and they never indicated by words or conduct that he could not go. Neither officer touched Bostick during their brief conversation and their tone was conversational.
 
 
 6
 Fulkerson asked Bostick if he had any identification, and Bostick produced his Illinois driver's license. After scrutinizing the license and noting Bostick's address, Fulkerson returned the license. Fulkerson also asked Bostick if he had his airline ticket; Bostick did not. He then asked Bostick if he had any luggage; Bostick said that he had not checked any luggage. When Fulkerson asked whether Bostick had traveled under his own name, Bostick replied, "Yeah, yeah, I think I did." Fulkerson asked Bostick how long he had stayed in Florida; Bostick replied that he had only visited for a few days. Fulkerson asked what Bostick did for a living; Bostick said he was unemployed.
 
 
 7
 Agent Fulkerson was becoming more suspicious. Fulkerson asked Bostick if he could search his shoulder bag, but also told Bostick that he could refuse permission. Bostick gave permission for his bag to be searched. During his search of the bag, Fulkerson found a brown glass vial with a rubber cap. Both Fulkerson and Johnson testified that such vials are typically used to store cocaine for personal use.
 
 
 8
 At this point, Fulkerson and Johnson thanked Bostick for his cooperation and watched Bostick leave the terminal. Fulkerson and Johnson returned to the baggage claim area where they saw two unclaimed bags, one of which was a soft brown suitcase. When Fulkerson checked the tag on this bag, he noticed that it contained only the first name, James, and listed the same address that he had just seen on Bostick's license. Later, when the agents pulled this tag out of its holder, they noticed that Bostick's real name and another address in Woodridge, Illinois were written on its opposite side. Another agent asked the airline for a list of passengers on Flight 419. Bostick's name was not on that passenger list.
 
 
 9
 After giving the airline a receipt for Bostick's bag, the agents subjected the bag to a canine sniff. The trained dog reacted positively, and a search warrant was obtained to search the luggage. That search uncovered approximately 522 grams of cocaine. Bostick was arrested at his apartment shortly thereafter.
 
 
 10
 Bostick was charged with possession with intent to deliver cocaine in violation of Illinois Revised Statutes, ch. 56 1/2, p 1401(a)(2) (1983). He was convicted in the Circuit Court for Cook County, Illinois. The Illinois Appellate Court affirmed that conviction. See People v. Bostick, 152 Ill.App.3d 1163, 113 Ill.Dec. 907, 515 N.E.2d 1066 (1st Dist.), leave to appeal denied, 116 Ill.2d 563, 113 Ill.Dec. 305, 515 N.E.2d 114 (1987). Bostick filed a petition for habeas corpus pursuant to 28 U.S.C. Sec. 2254.
 
 
 11
 In his petition, Bostick asserted the same Fourth Amendment claims that the Illinois Court of Appeals had rejected. Specifically, Bostick argued that he was subject to an illegal seizure when agents Fulkerson and Johnson questioned him in the vestibule of the airport terminal. He also argued that his luggage was illegally seized and searched. Initially, the district court denied his petition. On appeal, this court determined that Bostick could present his Fourth Amendment claim through a petition for habeas corpus because Bostick had not been given an opportunity for the full and fair litigation of his claim in the state court proceedings that led to his conviction; we therefore remanded his petition to the district court for a hearing on the merits of his Fourth Amendment claim. See United States ex. rel. Bostick v. Peters, 3 F.3d 1023 (7th Cir.1993).
 
 
 12
 After conducting an evidentiary hearing the district court denied Bostick's petition. The district court found that Bostick's encounter with agents Fulkerson and Johnson was a consensual interview rather than a nonconsensual seizure of his person. The district court also found that Bostick could not assert any Fourth Amendment claim based on a search of the suitcase because he had abandoned his luggage. It also found that, as a result of the information gathered from the interview, Fulkerson and Johnson had the reasonable suspicion needed to briefly detain his luggage for the purpose of conducting a canine sniff test. Bostick appeals.
 
 II. Analysis
 
 13
 On appeal, Bostick once again argues that the cocaine which supports his conviction was secured by various violations of his Fourth Amendment rights. Bostick's challenge takes three forms. First, he argues that his encounter with agents Fulkerson and Johnson was a seizure that violated the Fourth Amendment because the agents did not have the reasonable suspicion needed to justify this investigatory stop. As a result, Bostick concludes that the subsequent seizure and search of his luggage was tainted by this violation of his Fourth Amendment rights such that his motion to suppress the cocaine obtained in that search should have been granted. Second, Bostick argues that he did not abandon his luggage at the airport, and therefore can challenge its search and seizure. Third, Bostick argues that the agents did not have the reasonable suspicion needed to briefly detain his luggage for the purpose of conducting a canine sniff test.
 
 
 14
 Before addressing those claims we note that on remand to the district court Bostick was given an evidentiary hearing on the merits of his Fourth Amendment claim. See United States ex rel. Bostick, 3 F.3d 1023, 1029. Given this evidentiary hearing on the merits, we will review the district court's factual determination for clear error. United States v. Robinson, 30 F.3d 774, 781 (7th Cir.1994); United States v. McArthur, 6 F.3d 1270, 1275 (7th Cir.1993). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been made." Robinson, 30 F.3d at 781 (quotations and citations omitted).
 
 
 15
 The district court's factual findings are not clearly erroneous. At critical junctures where the evidence was contradictory the court believed the testimony of agents Fulkerson and Johnson over that of Bostick. "We give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses." McCarthur, 6 F.3d at 1275 (internal quotations and citations omitted). After reviewing the record, this court does not have a definite and firm conviction that the district court's findings are mistaken.
 
 
 16
 A. Bostick's encounter with agents Johnson and Fulkerson.
 
 
 17
 Bostick argues that the district court erred when it held that his encounter with agents Fulkerson and Johnson was a consensual stop rather than a seizure that implicated the Fourth Amendment. "[A] person has been seized within the meaning of the Fourth Amendment ... only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." McArthur, 6 F.3d at 1275 (internal quotations and citations omitted, brackets in the original). Further, "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to 'disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." Florida v. Bostick, 501 U.S. 429, 434 (1990) (internal citations omitted).
 
 
 18
 This court has identified a number of circumstances relevant to our objective inquiry. In McArthur, we noted that among the factors relevant to this inquiry are: (1) whether the encounter took place in a public area or whether the person questioned by the police was moved to another location; (2) whether the police informed the person that he was not under arrest and was free to go; (3) whether the police indicated to the person that he was a suspect or the specific target of a police investigation; (4) whether the person was deprived of documents without which he could not continue on his way; and (5) whether there was physical touching, a display of weapons, or other threatening behavior. McArthur, 6 F.3d at 1276. Whether the person agreed to speak with the law enforcement officers is also an important consideration. Robinson, 30 F.3d at 782.
 
 
 19
 First, we note that the district court properly disregarded Bostick's testimony concerning his personal belief that he could not go about his business in favor of the objective inquiry of whether a reasonable person would have believed he was not free to leave. See United States v. Soto-Lopez, 995 F.2d 694, 697-98 (7th Cir.1993) (rejecting defendant's claim that encounter with police was an investigatory stop because it occurred in a somewhat isolated area and defendant was facing a wall throughout the entire encounter). We can understand that, given Bostick's illegal activity, he may have feared that a refusal to cooperate would engender additional suspicion, but that subjective perception is not the focus of our inquiry. See McArthur, 6 F.3d at 1275 ("The test for determining whether a seizure has occurred for purposes of the Fourth Amendment is expressed in objective terms ..."); United States v. Rem, 984 F.2d 806, 810 (7th Cir.1993) (same).
 
 
 20
 Likewise, the district court did not err when it held that Bostick's conversation with agents Johnson and Fulkerson was a consensual encounter. Fulkerson and Johnson were dressed in plain clothes and had their weapons concealed when they approached Bostick. No weapons were displayed during the conversation. They did display their credentials, but only to identify themselves. Bostick agreed to speak with them and reentered the vestibule. They spoke for about five minutes in an area open to the public; Bostick was not taken to a remote area for questioning. Bostick did let Fulkerson look at his identification, but Fulkerson returned the license after briefly scrutinizing the document. At no time in the encounter did Fulkerson or Johnson touch Bostick or restrain him. Bostick had his back to the radiator, but he was not surrounded by the officers. Fulkerson told Bostick that he did not have to allow a search of his shoulder bag and that search was brief; again, the whole encounter took about five minutes. We agree with the district court that Bostick's encounter with agents Fulkerson and Johnson was not a seizure which implicated the Fourth Amendment. See McArthur, 6 F.3d at 1276 (initial encounter between DEA agents and defendant was consensual where agents in plain clothes approached defendant in public concourse of train station in non-confrontational manner, defendant was not moved to a remote area for questioning, she agreed to speak with the agents, and agent quickly returned license to her after briefly inspecting it); Soto-Lopez, 995 F.2d at 698 (initial encounter between defendant and DEA agents at airport was consensual where, inter alia, defendant was approached in public place, police asked to speak with him, briefly examined his license and plane ticket); United States v. Adebayo, 985 F.2d 1333, 1338 (7th Cir.1993) (initial encounter between DEA agents and defendant at airport was consensual where, inter alia, encounter took place in public area, defendant consented to speak with agents who were wearing plain clothes, never displayed weapons, and never touched him); United States v. Withers, 972 F.2d 837, 842 (7th Cir.1992) (initial encounter between DEA agents and defendant in airport was consensual where, inter alia, entire encounter occurred in public place, she was not moved to another area for questioning, and conversation was for only a brief time.)
 
 
 21
 B. Bostick's abandonment of his luggage.
 
 
 22
 Bostick also argues that the district court erred when it held that he had abandoned his luggage in the airport, and therefore could not establish an expectation of privacy protected by the Fourth Amendment. A search within the meaning of the Fourth Amendment only occurs when state action infringes upon a legitimate expectation of privacy. But if Bostick abandoned his luggage, its subsequent seizure and search would not violate his Fourth Amendment rights. See Rem, 984 F.2d at 810. The test for abandonment is whether an individual has retained any reasonable expectation of privacy in an object. Id.
 
 
 23
 The district court did not err when it held that Bostick had abandoned his luggage and therefore could not establish an expectation of privacy protected by the Fourth Amendment. Bostick told agents Fulkerson and Johnson that he had not checked any luggage and thereby disavowed its ownership. Bostick's "denial of ownership of the suitcase is, in our view, sufficient to preclude his assertion of any legitimate expectation of privacy in the bag." United States v. Rush, 890 F.2d 45, 48 (7th Cir.1989); see also United States v. Smith, 3 F.3d 1088, 1096 (7th Cir.1993) (defendant had no expectation of privacy in bag where he denied ownership). Thus, Bostick cannot show that he had an actual subjective expectation of privacy, when his disavowal of his luggage is considered in terms of the objective test used to evaluate Fourth Amendment claims. See Rem, 984 F.2d at 810 (because "subjective intent could be any hindsight excuse that fits the situation ... [w]e must instead examine the objective facts ..."); Rush, 890 F.2d at 48; Smith, 3 F.3d at 1096. Bostick's departure from the terminal simply confirmed his disavowal of ownership. See Rem, 984 F.2d at 811-812 (defendant abandoned luggage where he did not check his luggage, placed it in public rack remote from his private sleeper car, and abruptly left train at a nonpassenger stop). Bostick's expectation of privacy is also patently unreasonable. As this court has stated: "[a]ppellants cannot have it both ways; they cannot eschew ownership of the bag and then assert that a search of it violates their Fourth Amendment rights." Smith, 3 F.2d at 1096. Otherwise, a suspect would be able to thwart legitimate law enforcement initiatives by abandoning luggage yet preserving an option to suppress evidence obtained as a result of that abandonment. That is exactly what Bostick would like to do in this case. But Bostick cannot have it both ways; the district court did not err when it held that Bostick abandoned his luggage. Thus the resulting seizure and search of that luggage did not violate a legitimate expectation of privacy protected by the Fourth Amendment.
 
 III. Conclusion
 
 24
 Neither Bostick nor his luggage was seized in violation of the Fourth Amendment. Bostick's encounter with agents Fulkerson and Johnson was consensual, and his abandonment of his luggage belies any assertion that the resulting search and seizure violated his Fourth Amendment rights. The district court properly refused to suppress the evidence and properly denied Bostick's petition for habeas corpus. For the foregoing reasons, we
 
 
 25
 AFFIRM.
 
 
 
 *
 Hon. George C. Pratt, of the Second Circuit, sitting by designation