In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2904

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EARKLE J. TYLER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 05 CR 140—**James T. Moody**, *Judge.*

ARGUED FEBRUARY 27, 2007—DECIDED JANUARY 10, 2008

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Earkle Tyler was charged with possessing crack with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Tyler moved to suppress the crack, arguing that it was discovered only after police officers detained and searched him without reasonable suspicion. The district court denied this motion, and Tyler entered a conditional guilty plea. He now challenges the denial of his motion to suppress. Because the officers detained Tyler without reasonable suspicion that criminal activity may be afoot, the suppression motion should have been granted. We vacate Tyler's conviction and remand with instructions.

## I.  Background

Officers Adam Clark and James Onohan of the Hammond, Indiana police department testified at Tyler's suppression hearing and gave the following account of their encounter with him. At around 4:30 p.m. on Saturday, September 17, 2005, they were patrolling together in their squad car through a residential neighborhood in Hammond. They noticed a man, later identified as 29-year-old Earkle Tyler, walking near the intersection of Merrill and Rhode Streets with an open beer bottle in his hand. (Tyler lived at 830 Merrill Street, which is located about eight doors away from that intersection.) It looked to the officers as though there was "maybe one drink left" in the bottle. Onohan immediately told Clark, "[W]e need to stop this guy because he's got a beer bottle in his hand." Clark testified that he and Onohan were then under the mistaken impression that it is illegal to have an open alcoholic beverage on the streets of Hammond, so they pulled over "to confront Tyler about the beer bottle." Neither officer knew Tyler, and both conceded that other than seeing him carrying the open beer bottle, they had no reason to stop or question him.

The officers got out of the squad car and approached Tyler. Clark informed Tyler he was violating the law and asked "why he was being so nonchalant about walking on the street with a beer bottle." Tyler answered that he had just picked up the bottle and was going to go throw it in the trash. Clark testified that Tyler acknowledged he had been drinking earlier in the day and smelled of alcohol, but both officers concluded he was not intoxicated.

The officers then asked Tyler for identification in order to check for outstanding warrants. Tyler provided it, and the officers contacted their dispatcher to run a warrant check. As the officers waited for the warrant check, Tyler asked several times whether he could throw the beer

bottle away in the nearest trash can, about 50 feet away. The officers told him to "hang tight" until the warrant check was done. It took about two minutes for the dispatcher to report back that Tyler had no active warrants. Up to this point, Clark testified, Tyler was "very cooperative." Once the warrant check was completed, Clark handed Tyler's identification back to him and told him he was free to go.

As Tyler was putting his identification back in his pocket, however, Clark noticed a "bulge" either under Tyler's waistband or in his front pocket. Clark testified he had "no clue" what might have been causing the bulge, but he asked Tyler what it was. The officer testified that the bulge "could have been a gun[ ] [or] a knife," and after he asked Tyler what it was, it became "obvious" that it was "something that he didn't want us to know about." Tyler's reaction made it appear to the officers that "something was wrong." Tyler took a step back and raised the beer bottle to shoulder height. Clark interpreted this action as "a possible threat." Clark and Onohan both grabbed the hand that was holding the beer bottle, and Tyler then dropped the bottle. Clark also grabbed at the bulge in Tyler's pants and a struggle ensued. A purple Crown Royal bag was dislodged "within the course of the struggle," although Clark conceded it was "possible" he put his hand inside Tyler's clothing to get at the bulge. The officers' written report, entered as an exhibit at the suppression hearing, contains this description of Clark's recovery of the bag: "Officer Clark observed a bulge in Mr. Tyler's left front pocket and questioned Mr. Tyler of what it was. Mr. Tyler immediately stepped back and Officer Clark was able to grab a purple Crown Royal sack out of his left front pocket." The report does not state that Tyler raised his arm with the beer bottle. Nor does it indicate that Tyler was told he could leave before Clark first inquired about the bulge.

During the struggle, Tyler tried to snatch the bag back but was tackled, handcuffed, and placed in a squad car. Another officer who had arrived at the scene in response to Onohan's call for backup picked up the Crown Royal bag and opened it. The bag contained about 30.3 grams of crack and 24 grams of powder cocaine.

Tyler initially was booked on a state drug charge. He also received a citation for having an "open alcoholic beverage," ostensibly in violation of Hammond City Code § 99.16 (the current version is found at Hammond City Code § 99.26). The police report, as well as an affidavit prepared by a Drug Enforcement Agency task force officer and filed with the federal criminal complaint, both memorialize that the officers stopped Tyler because they observed him with an open alcohol container and told him "that it was against the law to walk down the street with an open alcohol container." But a few days after Clark and Onohan issued the citation, their supervisor informed them that it was not illegal to have an open alcohol container on the streets of Hammond. The Hammond City Code (then § 99.16, currently § 99.26) prohibits possession of open alcoholic beverages only "in any park or park street," with exception made for certain community events and properly permitted organizations.

At the suppression hearing, Clark acknowledged he and Onohan made a mistake about the open intoxicant law but testified that the main purpose for stopping Tyler was to see if he was publicly intoxicated, which *is* a violation of Indiana law. *See* IND. CODE § 7.1-5-1-3. The only basis for this suspicion, according to the officers' testimony, was the open beer bottle. The district court found both officers credible and held that Tyler's presence on a public sidewalk at 4:30 p.m. carrying an almost-empty beer bottle gave the officers reasonable suspicion that he may be publicly intoxicated. Thus, the court concluded, the officers had adequate justification for an

investigative detention under *Terry v. Ohio*, 392 U.S. 1 (1968). After the district court denied the suppression motion, Tyler entered a conditional guilty plea and was sentenced to the statutory mandatory minimum sentence of 120 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).

## II. Discussion

We review the district court's denial of Tyler's suppression motion according to a split standard of review. Historical facts are reviewed for clear error, and "due weight" deference is given "to [the] inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Sholola*, 124 F.3d 803, 821 (7th Cir. 1997). Fourth Amendment determinations regarding the existence of a seizure and reasonable suspicion are reviewed de novo. *Ornelas*, 517 U.S. at 697; *United States v. Scheets*, 188 F.3d 829, 835-36 (7th Cir. 1999); *Sholola*, 124 F.3d at 814-15.

Here, as in the district court, the focus of Tyler's argument is that he was detained without reasonable suspicion. The government, however, argues for the first time on appeal that Clark and Onahan did not detain Tyler at all. In the district court, the government argued that the officers conducted a *Terry* stop justified by reasonable suspicion that Tyler was publicly intoxicated, and the district court accepted this argument. The government now characterizes the encounter as consensual police-citizen questioning, which does not implicate the Fourth Amendment and need not be supported by reasonable suspicion. *United States v. Drayton*, 536 U.S. 194, 200-01 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the

street or in other public places and putting questions to them if they are willing to listen."); *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006) ("Even though approaching a person on the street (or at work, or on a bus) to ask him a question causes him to stop for at least the time needed to hear the question and answer (or refuse to answer), the curtailment of the bystander's mobility, privacy, and peace of mind is so slight that neither probable cause nor reasonable suspicion is required to justify the police action.") (citation and internal quotation omitted); *United States v. Adamson*, 441 F.3d 513, 519-20 (7th Cir. 2006) ("It is well settled that police may approach an individual in a public place and seek the individual's cooperation in answering a few questions. Such an encounter is not a 'seizure' within the meaning of the Fourth Amendment."); *United States v. Childs*, 277 F.3d 947, 950 (en banc) (7th Cir. 2002) ("[T]he Supreme Court has held repeatedly that police may approach persons and ask questions or seek their permission to search, provided that the officers do not imply that answers or consent are obligatory.").

" '[A] person has been "seized" within the meaning of the Fourth Amendment . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)); *United States v. McCarthur*, 6 F.3d 1270, 1275 (7th Cir. 1993). Determining whether a seizure has occurred is a highly fact-bound inquiry, but the following are relevant factors: whether the encounter took place in a public place or whether police removed the person to another location; whether the police told the person he was not under arrest and was free to leave; whether the police informed the person that he was suspected of a crime or the target of an investigation;

whether the person was deprived of identification or other documents without which he could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required. *McCarthur*, 6 F.3d at 1275-76.

Here, the district court found the officers credible and accepted their version of events; at least as to the seizure inquiry (in contrast to the reasonable suspicion inquiry), the parties do not dispute the historical facts. Applying independent review and considering the facts in their totality, we conclude that a reasonable person in Tyler's circumstances would not have believed he was free to leave. Although the encounter took place on a public street and the officers did not draw their weapons or (at least initially) lay hands on Tyler, they told him he was violating the law, took his identification from him and retained it while they ran a warrant check, and told him he could not leave until the warrant check was completed.

We find this case analogous to a line of cases in this circuit involving airport and train station stops by narcotics officers. *See McCarthur*, 6 F.3d at 1276-77; *United States v. Soto-Lopez*, 995 F.2d 694, 698 (7th Cir. 1993); *United States v. Williams,* 945 F.2d 192, 197 (7th Cir. 1991); *United States v. Sterling*, 909 F.2d 1078, 1083 (7th Cir. 1990); *United States v. Palen*, 793 F.2d 853, 857 (7th Cir. 1986); *United States v. Borys*, 766 F.2d 304, 311 (7th Cir. 1985); *United States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir. 1983). In each of these cases, narcotics officers stopped travelers at airports or train stations on some but generally insufficient suspicion to justify a *Terry* stop. In each case we characterized the initial encounter as

consensual questioning and moved on to the question of whether the consensual encounter ripened into an investigative detention requiring reasonable suspicion under *Terry*. Where the officers told the defendant he was under investigation for carrying drugs or retained possession of his identification, travel documents, and/or luggage, we held there was a seizure. *See McCarthur*, 6 F.3d at 1276; *Sterling*, 909 F.2d at 1083; *Palen*, 793 F.2d at 857; *Borys*, 766 F.2d at 311; *Cordell*, 723 F.2d at 1285. Where the officers only generally identified themselves as narcotics investigators and immediately returned the defendant's identification and travel documents, we held the initial consensual encounter did not ripen into a seizure. *See Soto-Lopez*, 995 F.2d at 698; *Williams*, 945 F.2d at 197.

In this case, the officers told Tyler—mistakenly, as it turns out—that he was violating the law by carrying an open container of alcohol in public. A reasonable person would not feel free to walk away after being confronted by two police officers and told he was committing a crime in the officers' presence. Moreover, the officers retained Tyler's identification while they ran a warrant check and told him he could not leave until the check was completed. Under these circumstances, a reasonable person would have believed he was obliged to stay put.

So we have a seizure, and our next question is whether reasonable suspicion justified it. *See Terry*, 392 U.S. at 22-23. As we have noted, the district court held that the stop was justified by reasonable suspicion that Tyler was publicly intoxicated. Tyler's challenge to this conclusion is two-fold. He argues: (1) he was stopped solely because the officers mistakenly believed he was violating an open-container ordinance and the officers' contrary testimony at the suppression hearing is false; and (2) even if the officers did stop him on suspicion of public intoxication, their suspicion was unreasonable.

As to the first argument, we have held that a mistake of law (as opposed to a mistake of fact) cannot justify an investigative detention. *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir. 2006). Here, the officers' mistake was one of law. They thought the Hammond City Code prohibited carrying open alcoholic beverages in public; it did not. However, we cannot accept Tyler's subsidiary argument that the officers' alternative explanation for stopping him was false. The district court credited the officers' testimony; we will not overturn the court's credibility finding unless Tyler establishes that the court credited testimony that is "impossible under the laws of nature." *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005). Tyler has not met this very high burden.

We come, then, to the question of the district court's reasonable suspicion ruling, which we review independently. Reasonable suspicion "is less than probable cause but more than a hunch," *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006), and "articulable facts" must support the officer's belief "that criminal activity is afoot," *Adamson*, 441 F.3d at 520. The test is an objective one based on the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Here, the officers were unable to articulate a single fact—other than the open beer bottle—that would support a reasonable suspicion that Tyler was intoxicated. On appeal the government does little more than *declare* that the officers reasonably suspected that Tyler "might be currently intoxicated and a potential threat to the safety of others." But when the officers observed Tyler from their car, he was not stumbling, staggering, weaving, or otherwise unsteady on his feet. He was not incoherent when they approached; his speech was not slurred and his eyes were not bloodshot. In short, Tyler exhibited none of the usual signs of intoxication commonly cited by law enforcement officers. Indeed, the officers candidly

admitted that the open beer bottle was the sole basis for their suspicion that Tyler was intoxicated.

That Tyler was walking down the street on a Saturday afternoon in September lawfully carrying an open beer supports only a suspicion that he was drinking, not that he was drunk. *Cf. United States v. Lenoir*, 318 F.3d 725, 729-30 (7th Cir. 2003) (officer reasonably suspected individual was violating Indiana's public intoxication statute after observing suspect's irregular gait); *Hirsch v. Burke*, 40 F.3d 900, 903 (7th Cir. 1994) (officer had probable cause to arrest individual for violating Indiana's public intoxication statute when suspect "had trouble balancing himself and appeared incoherent," "smelled of alcohol and had bloodshot eyes," and "was unable to state his name or date of birth"). If carrying an open bottle of beer in public is enough to create a reasonable suspicion of intoxication, then the police may detain and investigate any person who drinks beer in public. That, essentially, is the government's contention, but that is not the point of Indiana's public intoxication statute. "The spirit of the public intoxication statute is to prevent people from becoming inebriated and then bothering and/or threatening the safety of other people in public places.*" Wright v. State*, 772 N.E.2d 449, 456 (Ind. Ct. App. 2002).

The absence of reasonable suspicion to justify the officers' initial *Terry* stop decides this case; everything that followed was fruit of the poisonous tree. *See, e.g.*, *United States v. Jerez*, 108 F.3d 684, 694-95 (7th Cir. 1997); *see also Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Accordingly, we vacate Tyler's conviction and remand with instructions to grant his motion to suppress.

VACATED and REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*