Joseph RILEY, Petitioner-Appellee,

v.

Frank H. GRAY, Supt., Respondent-Appellant.

No. 81–3097.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1981.

Decided March 22, 1982.

Randall G. Burnworth, Richard David Drake, Asst. Attys. Gen., Columbus, Ohio, for respondent-appellant.

Ralph DeNune, III, DeNune, Douglas, Bayford & Wilson, John F. Potts, Toledo, Ohio, for petitioner-appellee.

Before EDWARDS, Chief Judge, JONES, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

This appeal raises questions concerning the scope of federal habeas corpus relief, 28 U.S.C. Sec. 2254, for violations of the fourth amendment. The district court issued the writ, finding that violations of the fourth amendment had occurred. The respondent-appellant, Frank H. Gray, appeals from the order granting the writ, asserting that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037,

49 L.Ed.2d 1067 (1976), precludes review of the petitioner's fourth amendment claims in federal habeas proceedings and that the deterrent purpose of the exclusionary rule would not be served by excluding the evidence used to convict Riley. We believe that habeas relief was properly granted and, therefore, we affirm.

The petitioner occupied an apartment over the Red Owl Bar in Paulding, Ohio. On September 29, 1976, Police Officer Walter Heinrichs was summoned to the Red Owl, and upon arriving he found the petitioner lying in the doorway of the tavern, bleeding from a gunshot wound. Heinrichs went to the lavatory in the rear of the tavern, where he found James Christian, who indicated that he had accidentally shot Riley. Heinrichs asked to see the weapon which had been used. Christian led him through the tavern and to the door of the second floor apartment. The door, which was the only entrance to the apartment, was locked. Christian gave the key to Heinrichs.[1] Heinrichs opened the door, stepped inside and immediately noticed a revolver lying on the kitchen table. After making a cursory examination of the apartment, he left, closing and locking the door behind him. Heinrichs retained possession of the keys.

Shortly after this initial entry, the Chief of Police, Charles Watson, arrived at the Red Owl Bar. Using the key furnished by Heinrichs, Watson entered the apartment and saw the gun on the table, as well as blood on the floor. After this brief entry Heinrichs again locked the door.

The final warrantless entry was made by Heinrichs and Deputy Sheriff David Harrow. The Paulding Police Department had summoned Harrow because of his expertise in collecting and evaluating physical evidence. Harrow was to "process" the second floor apartment by removing, photographing, and evaluating any physical evidence which was found. While conducting the investigation, Harrow noticed a bullet hole in the wall between the kitchen and the bedroom. In an effort to find the bullet, Harrow entered the bedroom and discovered a variety of contraband, including automatic weapons, marijuana, and lysergic acid diethlamide (LSD). The officers immediately secured the apartment and left to obtain a search warrant. The officers indicated that they first learned that the apartment belonged to Joseph Riley when preparing the affidavits necessary to obtain the search warrant. The police obtained a warrant that evening, approximately five hours after Officer Heinrichs' initial entry.

After the contraband was seized, the Paulding County Grand Jury indicted Riley for aggravated trafficking, trafficking in marijuana, drug abuse, possession of a dangerous ordnance, and carrying a concealed weapon. Riley moved to suppress the contraband, but the motion was denied. Riley was convicted of aggravated trafficking, trafficking in marijuana, and drug abuse. Riley appealed to the Ohio Court of Appeals for the Third District and argued that the drugs should have been suppressed because they had been seized pursuant to a warrant based on information obtained in the warrantless search of his home, in violation of his fourth and fourteenth amendment rights. The Ohio Court of Appeals ruled that Riley lacked standing to challenge the search. The state did not raise the standing issue in the trial court and neither party briefed or argued the issue. The Ohio Supreme Court overruled Riley's motion for leave to appeal.

In May, 1979, Riley filed a petition for a writ of habeas corpus with the United States District Court for the Northern District of Ohio. The respondent filed a return of the writ and argued that habeas review was precluded by Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The matter was referred to a magistrate, who determined that habeas review was not precluded, and recommended that an evidentiary hearing be held. The district court

1. Christian testified, in the hearing held by the district court, that he took Riley's keys as he was leaving the apartment, after having already shot Riley. Apparently, he picked up the keys and locked the door behind him.

adopted the magistrate's conclusion that *Stone* did not bar habeas review, held an evidentiary hearing, and concluded that the fourth amendment claim was without merit and should be dismissed. The petitioner filed a motion for reconsideration with the court, pointing out that *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), held that no "crime scene" exception to the warrant requirement exists. The district court reevaluated the record, determined that the search could not be justified on the basis of exigent circumstances or consent, and issued the writ.

■ The threshold issue is whether *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), prevents habeas review of the petitioner's fourth amendment claims. *Stone* precludes habeas review "where the State has provided an opportunity for full and fair litigation of a fourth amendment claim ...." *Id.* at 494, 96 S.Ct. at 3052. This circuit, in *Moore v. Cowan*, 560 F.2d 1298 (6th Cir. 1977), concluded that *Stone* did not require that the state court rule on the merits of each claim. *Id.* at 1302. Instead, we indicated that the state court need do no more than "take cognizance of the constitutional claim and rule in light thereof." *Id.* Thus, in deciding whether the petitioner received an opportunity for a full and fair hearing in the state court, we must determine whether the state court took "cognizance" of the petitioner's claim.

The respondent argues that *Stone* requires only that the state provide the procedural mechanism for the presentation of fourth amendment claims. The respondent asserts that the scope of our inquiry is limited to the opportunity available in theory, and the opportunity which is in fact afforded to a particular litigant is of no consequence. *E.g., Caver v. Alabama*, 577 F.2d 1188, 1193 (5th Cir. 1978). For example, in *Williams v. Brown*, 609 F.2d 216 (5th Cir. 1980), the state court failed to reach the merits of the fourth amendment claim because of a procedural error. In affirming the district court's dismissal of the petition, the Fifth Circuit stated that "in the absence of allegations that the proceedings provided by a state to fully and fairly litigate fourth amendment claims are systematically applied in such a way as to prevent the actual litigation of fourth amendment claims .... *Stone* must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Id.* at 220. The inquiry is limited to the adequacy of the mechanism in the abstract; its effectiveness in a particular situation is not pertinent.[2]

The petitioner argues for a narrower interpretation of *Stone*. Essentially, he relies upon *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978), in which the Tenth Circuit concluded that "[o]pportunity for full and fair consideration includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes the full and fair evidentiary hearing contemplated by *Townsend v. Sain*, 392 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Furthermore, it contemplates recognition and at least colorable application of the correct fourth amendment constitutional standards." *Id.* at 1165. Thus, the Tenth Circuit reviews the merits of the fourth amendment claim, at least to determine if there was egregious error.

■ We believe that neither position is wholly satisfactory. The respondent's position is not entirely consistent with *Stone*. *Stone* is based on the perception that the exclusionary rule should not be applied in federal habeas review of a state conviction because of its limited utility in that setting. *Stone*, 428 U.S. at 494, 495, 96 S.Ct. at 3052. Implicit in the Court's analysis is the belief that if an issue has been considered at trial, and on direct appeal of the state court conviction, then the issue is close, involving nuances of the fourth amendment which

**2.** The Seventh Circuit has adopted a similar position with respect to *Stone*. *See United States ex rel. Maxey v. Morris*, 591 F.2d 386, 388–89 (7th Cir. 1979) (procedural opportunity was all that *Stone* requires). The Seventh Circuit has not, however, faced a factual situation similar to *Williams*.

may be too complex to allow easy application by police officers. In these situations, the special deterrent value of the exclusionary rule is at its nadir and should not be applied. *Id.* at 538–40, 96 S.Ct. at 3072–73 (White, J., dissenting). Thus, the value of reviewing these claims collaterally is small. *Stone* is predicated on the Court's assessment of the exclusionary rule's utility; application of the rule is justified when the state court denies the petitioner a full and fair opportunity to litigate his claims. *Id.* at 494, 96 S.Ct. at 3052. We perceive no difference in the utility of the exclusionary rule where an opportunity is frustrated because of an inadequate procedural mechanism or where an opportunity is frustrated because of the manner in which the mechanism is applied. In either instance, the consequence to the defendant is the same: an opportunity to litigate the claim has been denied because of a procedural shortcoming.

Similarly, we decline to adopt the petitioner's interpretation of *Stone.* We believe that a limited inquiry into the correctness of state court decisions, occurring as a matter of course in the district courts, would be inconsistent with *Stone. Id.* at 493 n.35, 96 S.Ct. at 3052 n.35. The language of *Gamble,* however, entails an examination of each state decision which precipitates a habeas petition. This case by case review is inconsistent with *Stone's* assumption that state courts are as capable of deciding fourth amendment issues as federal courts. When a petitioner alleges egregious error in the application of fourth amendment principles, of a magnitude and nature similar to the state court error present in *Gamble,* however, a federal habeas court might be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner.

■ In our view, *Stone* and *Moore v. Cowan, supra,* require a district court to make two distinct inquiries in habeas proceedings. Initially, the district court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. *Williams v. Brown,* 609 F.2d 216, 220 (5th Cir. 1980). Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism. *See Boyd v. Mintz,* 631 F.2d 247, 250 (3rd Cir. 1980); *Gates v. Henderson,* 568 F.2d 830, 840 (2nd Cir. 1977) (*en banc*), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).[3]

The mechanism provided by the State of Ohio for the resolution of fourth amendment claims is, in the abstract, clearly adequate. Ohio R.Crim.P. 12 provides an adequate opportunity to raise fourth amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing a notice of appeal. *See* Ohio R.App.P. 3(A) and Ohio R.App.P. 5(A). These rules provide an adequate procedural mechanism for the litigation of fourth amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision. *See O'Berry v. Wainwright,* 546 F.2d 1204, 1213 (5th Cir. 1977).

■ The second part of the analysis addresses the problem here. The state appellate court held that the petitioner lacked standing to raise the fourth amendment claim. The parties did not brief or argue this issue, and it was not raised in the trial

---

**3.** Of course, petitioner's opportunity to raise his claim may be legitimately frustrated by the state's procedural mechanism. For instance, the harmless error doctrine may legitimately frustrate the petitioner's claim by rendering his fourth amendment claim immaterial. *E.g. Moore v. Cowan,* 560 F.2d 1298, 1302 (6th Cir. 1977). Similarly, an independent and adequate state procedural ground may also legitimately serve to frustrate the petitioner's opportunity to raise a fourth amendment claim. *E.g., Gates v. Henderson,* 568 F.2d at 840. *See also Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

court.[4] The state appellate court, in its opinion, did not discuss or apply the rule of *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which had not yet been overruled by *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). The Court in *Jones* held that a person, charged with an offense involving possession of contraband as one of its elements, need not show that he had standing to challenge the search.[5] *Id.* 362 U.S. at 263–64, 80 S.Ct. at 732. The state appellate court's failure to apply *Jones* made inquiry into the petitioner's standing necessary. After reviewing the transcript of the hearing, the appellate court concluded that because there was no evidence indicating that the petitioner had standing to challenge the search, it could not rule on the merits of the claim. While failure to apply the rule was perhaps understandable, the petitioner's reliance upon the rule was equally understandable, and the petitioner's reliance upon *Jones* in the trial court resulted in his failure to prove that he actually had standing.

We do not believe that the appellate court's failure to apply *Jones* denied the petitioner an opportunity for full and fair litigation, because its action may have been warranted in light of intervening decisions. *United States v. Hunter,* 550 F.2d 1066, 1072 (6th Cir. 1977). We believe, however, that the state appellate court frustrated the petitioner's opportunity to litigate his fourth amendment claims because it failed to remand the case to the trial court to allow the petitioner to establish his standing to challenge the search. Although such a remand is often not necessary, *e.g., United States v. Hunter, supra,* the record in this case indicates that the petitioner could have proven his standing to challenge the search[6] had he anticipated the appellate decision. Further, we believe that the petitioner's reliance upon *Jones* was justified, and that requiring him to anticipate the need to prove his standing in the trial court would be unreasonable. Consistent with our conclusion is the Supreme Court's disposition in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In *Salvucci,* which finally overruled *Jones,* the Court remanded the case to allow the defendant to prove that he had "a legitimate expectation of privacy," for many of the same reasons we have just outlined. 448 U.S. at 95, 100 S.Ct. at 2554.

■ In sum, we believe that the district court's interpretation of *Stone* must be affirmed. We reach this conclusion, despite the facial adequacy of Ohio's procedural mechanism, because we believe that the procedure was applied in a manner that, through no fault of the petitioner, deprived him of an opportunity to fully litigate his claim. We hold that federal habeas relief is available when a criminal defendant is not allowed to fully present his fourth amendment claim in the state courts because of unanticipated and unforeseeable application of a procedural rule which prevents state court consideration of the merits of the claim.

■ Because we believe that the district court applied *Stone* correctly, we must re-

---

4. *See State v. Morris,* 42 Ohio St.2d 307, 329 N.E.2d 85 (1975) (Syllabus # 1) (state's failure to raise standing amounts to a waiver).

5. The petitioner was convicted of one count of aggravated trafficking, Sec. 2925.03(A)(6) of Ohio Rev.Code Ann.; one count of trafficking in marijuana, Sec. 2925.03(A)(6) of Ohio Rev. Code Ann.; and three counts of drug abuse, Sec. 2925.11(A) of Ohio Rev.Code Ann. Possession is a necessary element of each of these offenses. Further, the district court found, and the respondent does not dispute the finding, that petitioner does have standing to raise the fourth amendment claim.

6. For example, questioning of the police officers indicated that the petitioner rented the apartment. Further, Officer Keith Baird indicated that "it was pretty common knowledge where he [the petitioner] lived for the last year," during trial, in response to an inquiry into the identity of the apartment's tenant. This record presents a situation which is decidedly different from cases such as *United States v. Hunter, supra.* In *Hunter,* the absence of standing was clear from the record before this court. Here, however, the Ohio Court of Appeals indicated that it would not rule on the merits of the petitioner's claim because Riley's standing was not clear from the record.

view its decision on the merits of the petitioner's claim. The district court viewed the search, quite correctly, as warrantless, because a warrant was not obtained until after the contraband had been discovered. Warrantless searches are *per se* unreasonable under the fourth amendment, subject to only a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Thus, the search of the petitioner's apartment is not valid unless the circumstances fit into one of the exceptions to the general warrant requirement.

■ The respondent relies upon the "consent" exception to the warrant requirement. He argues that Christian's consent allowed the police to search the petitioner's apartment, and that Christian's consent was knowingly and freely given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Vale v. Louisiana*, 399 U.S. 30, 35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970). In order for the consent to be valid, the person giving the consent must have the authority to do so, *Stoner v. California*, 376 U.S. 483, 489, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1963), and the consent must be voluntarily given. *Schneckloth*, 412 U.S. at 223, 93 S.Ct. at 2045.

■ We believe Christian's consent was not valid because he lacked authority to permit a search of the apartment. A person may consent to a search if he possesses "common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The touchstone of common authority is "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of

their number might permit the common area to be searched." *Id.* at 171 n.7, 94 S.Ct. at 993 n.7. With these factors as the focus of our analysis, we shall examine the extent of Christian's authority.

Christian did not live in the petitioner's apartment. Although he had known the petitioner for several years, he was not a regular visitor to the apartment and, except for the night of the shooting, he never had possession of the keys to the apartment. Finally, Christian testified that he did not have permission to enter the apartment when the petitioner was not there. The petitioner corroborated this testimony, and the respondent did not dispute it. In light of this testimony, we agree with the district court's conclusion that Christian lacked authority to consent to the search. He had no right to use the property and did not have access or control for any purpose. Moreover, we refuse to infer that the petitioner "assumed the risk" that Christian would consent to a search merely by inviting Christian into his home. We hold that Christian was without authority to consent to the search of the petitioner's apartment and, therefore, that the warrantless search and subsequent seizure of the contraband was unlawful.[7]

Finally, the respondent argues that the deterrent purpose of the exclusionary rule would not be served by the suppression of the evidence seized in this case, because the officers had a reasonable, good faith belief that Christian had authority to consent to the search and that the search was lawful. Essentially, the respondent asks us to adopt the rule and rationale of *United States v. Williams*, 622 F.2d 830 (5th Cir. 1980) (*en banc*), *cert. denied*, 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). The Fifth Circuit in *Williams* considered the underlying purpose of the exclusionary rule and concluded that the exclusionary rule serves no deterrent purpose when the police illegally seize evidence because of a reasonable, good

---

7. The respondent also argues that Christian had apparent authority to consent to the search because his possession of the keys caused the police officers to reasonably believe that he, in fact, possessed the requisite authority. This contention can be summarily dismissed. *Stoner v. California*, 376 U.S. 483, 488, 84 S.Ct. 889, 892, 11 L.Ed.2d 856 (1964).

faith belief that they have acted properly. *Id.* at 847. Because we have concluded that the officers' belief that the search was proper was unreasonable under the circumstances, we need not decide whether such an exception exists. *See United States v. Downing*, 665 F.2d 404 (1st Cir. 1981).

The officers' belief that Christian's implicit consent permitted them to enter the apartment was unreasonable. The only objective fact which ordinarily might suggest that Christian had authority to consent is his possession of the apartment key. Officer Heinrichs, Deputy Harrow, and Chief Watson testified that they did not know who lived in the apartment. Watson testified that he did not ask Christian whether the apartment belonged to him and that, to his knowledge, no one else asked that question. Harrow indicated that he was unaware whether permission for the search had even been given at all. The law is reasonably clear that there must be some sort of connection between the person consenting to the search and the area to be searched. *United States v. Matlock*, 415 U.S. at 171 n.7, 94 S.Ct. at 993 n.7. Thus, the extent of Christian's dominion over the apartment was vital to his capacity to consent to the search. The failure of the police to inquire into that subject is unreasonable. If we were to hold that this course of conduct supports an objectively reasonable belief, then we would, in effect, be condoning deprivations of constitutional rights which are the result of negligent police conduct. Moreover, if we held that the police had a reasonable belief, we would, in effect, encourage the police to avoid inquiring into the facts of the situation. The exclusionary rule is designed to deter negligent, as well as wilful, deprivations of constitutional rights. *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974). Therefore, the failure to suppress evidence which is improperly obtained primarily because the police failed to inquire and ascertain the operative facts would be inconsistent with the deterrent purpose of the exclusionary rule.

The judgment of the district court is affirmed.