829 F.2d 37
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen Andrew POOLE, Defendant-Appellant.
 No. 86-5678
 United States Court of Appeals, Fourth Circuit.
 Argued July 9, 1987.
Decided September 3, 1987.
 
 Dale J. Stone (Office of United States Attorney) for appellee.
 William E. Martin (Federal Public Defender) for appellant.
 Before K.K. HALL and WILKINS, Circuit Judges, and G. ROSS ANDERSON, Jr., District Judge for the District of South Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Stephen Andrew Poole conditionally plead guilty to a charge of stealing government property in excess of One Hundred and No/100 ($100.00) Dollars. Pursuant to Rule 11(a)(z) of the Federal Rules of Criminal Procedure, the appellant reserved his right to appeal the denial of his motion to suppress certain evidence.
 
 
 2
 The district court denied appellant's motion to suppress evidence found in the locked trunk of a deserted car. The evidence consisted of seventy-six (76) hand grenades. The deserted car was located on a farm owned by appellant's father. Law enforcement officers searched the automobile without obtaining a warrant. The district court denied the motion to suppress based on a finding of a valid consent to search by appellant's father. We affirm.
 
 
 3
 Appellant questions (1) whether his father possessed authority to consent to a search of the car's locked trunk and (2) whether officials exceeded the scope of any consent by breaking open the trunk.
 
 
 4
 Martin A. Poole, appellant Stephen Poole's father, owns a seventy acre farm in Traveler's Rest, South Carolina, but maintains a residence in Greenville, South Carolina.
 
 
 5
 By affidavit, the appellant indicates he lived at both locations between April and August of 1984. He left some of his personal property on the farm. One of the items was a 1963 Chevrolet.
 
 
 6
 The car was parked in a carport on the farm and not moved for two years prior to the disputed search. The father did not possess keys to the automobile. It is undisputed that appellant owned the 1963 Chevrolet.
 
 
 7
 On July 31, 1984 Martin A. Poole met with an investigator at the FBI's office in Greenville, South Carolina. During the conversation Martin Poole orally consented to the search of his Traveler's Rest farm after being told the FBI was seeking to locate a missing United States Marine Corps front end loader.
 
 
 8
 On August 16, 1984 officers located the missing front end loader at the Traveler's Rest farm. They also found a large indention where one officer suspected a missing Greenville Police Department vehicle might be buried. (Neither the police car nor the front end loader are in issue in this appeal).
 
 
 9
 The officers called Martin Poole who came out to the farm and opened the front gate with his keys for investigators. Martin Poole signed a consent to search form again authorizing the FBI to search his Traveler's Rest farm. A wrecking service had already arrived for the removal of the front end loader.
 
 
 10
 On August 20, 1984 officers returned to the Traveler's Rest site. They excavated the depression observed earlier and found a stolen police car. The depression and the police cruiser turned out not to be located on Martin Poole's property. Rather, the depression was located on land belonging to a nephew of Martin Poole.
 
 
 11
 On August 21, 1984 Martin Poole again consented upon request to the continued search of his farm.
 
 
 12
 Officers resumed their search on August 23, 1984. They forced open locks on several buildings and located several items of contraband that are not in issue in this appeal. Additionally, the officers noticed two automobiles.
 
 
 13
 One of the automobiles, a 1969 Plymouth, proved to be an empty shell. The Plymouth lacked an engine, transmission or interior. No contraband or other evidence was found inside the 1969 Plymouth.
 
 
 14
 The other automobile, a 1963 Chevrolet, was located inside a three-sided carport. The rear of the carport was open.
 
 
 15
 The 1963 Chevrolet lacked a license plate, a battery and a current inspection sticker. The car did not appear to have been moved for some time. Weeds grew immediately outside the carport. In fact, the car had not been moved for two years.
 
 
 16
 The doors to the 1963 Chevrolet were unlocked. No contraband or other evidence was found in the car's interior.
 
 
 17
 The trunk was locked. The trunk was forced open. The officers did not ask Martin Poole for the keys nor if he owned the 1963 Chevrolet before breaking open the trunk. Inside, the officers located the seventy-six (76) hand grenades that led to appellant's indictment.
 
 
 18
 The officers assumed all personal property at the Traveler's Rest farm belonged to or was under the control of Martin Poole.
 
 
 19
 Obviously, the 1963 Chevrolet was incapable of self-propulsion as it lacked a battery.
 
 
 20
 Appellant contends the evidence found in the trunk of the 1963 Chevrolet should have been suppressed on two alternative grounds. He first contends Martin Poole lacked authority to consent to the search of the vehicle's trunk as it was locked and appellant alone possessed the keys. Secondly, appellant contends the officers exceeded the scope of Martin Poole's consent by forcing open the trunk of the seemingly deserted automobile.
 
 
 21
 Both arguments hinge on two opposing facts. On the one hand, the trunk was locked. On the other hand, the car was in very bad condition and seemed deserted.
 
 
 22
 After weighing the two facts, the Court finds the deserted appearance of the automobile defeats any reasonable expectation of privacy by the appellant in the trunk. The deserted appearance also defeats any duty of the officers to ask specific permission from Martin Poole before opening the trunk.
 
 
 23
 1. Martin Poole's Ability to Consent to the Warrantless Search of his Son's Car:
 
 
 24
 An exception to the general rule that warrantless searches are per se unreasonable under the Fourth Amendment holds that individuals may waive their rights by validly consenting to a search. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). The person consenting to the search need not be the owner of the searched property and need not be the person eventually charged as a result of the search. United States v. Matlock, 415 U.S. 164 (1974). Two criteria must be met in order for a third party consent to be effective. First, the third party must have authority to grant a valid consent. Stoner v. California, 376 U.S. 483 (1964); United States v. Block, 590 F.2d 535 (4th Cir. 1978); Reeves v. Warden, 346 F.2d 915 (4th Cir. 1965). Second, to be effective the third party consent must be voluntarily given. Bumper v. North Carolina, 391 U.S. 543 (1968).
 
 
 25
 In justifying a warrantless search through the 'consent' exception the government bears the burden of proof that the consent was effective. United States v. Morrow, 731 F.2d 233 (4th Cir. 1984); Bumper, 391 U.S. at 548.
 
 
 26
 With regard to the element of proving a third party possessed authority to consent to search, this Court previously stated:
 
 
 27
 [authority] may be based simply upon the fact that the third person shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others. United States v. Block, 590 F.2d 535, 539-40 (4th Cir. 1978), citing United States v. Matlock, 415 U.S. 164 (1974).
 
 
 28
 The question before the Court is whether the circumstances at the Traveler's Rest farm made it reasonable to believe that Martin A. Poole possessed the right to permit the inspection of the locked trunk. If such circumstances existed, then Martin A. Poole had authority to consent to the search and the appellant 'assumed the risk' his father would consent to such a search.
 
 
 29
 In United States v. Block, 590 F.2d 535 (4th Cir. 1978), this Court held invalid the warrantless search of a locked footlocker based solely on the consent of the defendant's mother. Prior to forcing open the footlocker, the officers asked who owned the locker. The defendant's mother replied that it belonged to her son. The officers were also informed that the mother did not possess keys. The police thus knew in advance the footlocker belonged exclusively to the defendant.
 
 
 30
 Block never established a per se rule that third parties lack authority to consent to the search of any locked object. A lock is simply one factor, admittedly an important one, in determining whether a defendant possessed a reasonable expectation of privacy in the article searched.
 
 
 31
 In contrast to a footlocker that requires affirmative action to lock, automobile trunks are routinely locked with a minimal or no affirmative act on the part of the owner. There is nothing in the record below to indicate the trunk did not automatically lock on closing. Given the everyday nature of locking a car trunk, the Court is unable to attach great significance to the trunk being locked in a deserted car. Additionally, the police received no advance notice the 1963 Chevrolet belonged to the appellant. All of these facts and the deserted appearance of the car readily distinguish this case from Block.
 
 
 32
 Appellant wishes this Court to go beyond Block and hold that whenever officers encounter a locked object during a warrantless search based on third party consent, the Fourth Amendment requires that the officers ask who owns the property before opening the lock. Appellant argues that such a rule would prevent police negligence and points out that the exclusionary rule under the Fourth Amendment serves to prevent negligent as well as willful police misconduct. Michigan v. Tucker, 417 U.S. 433, 447 (1974); Riley v. Gray, 674 F.2d 522, 529 (6th Cir. 1982).
 
 
 33
 Although a per se rule possesses the advantage of clarity, the Court feels the Constitution is better served by reviewing the issue of third party consent on a case by case basis.
 
 
 34
 There is nothing in the record to indicate any police negligence whatsoever in the search of appellant's 1963 Chevrolet. Martin Poole gave his permission on three separate occasions to highly intrusive searches of his Traveler's Rest property. Substantial contraband had already been located. More importantly, the car appeared deserted. In the absence of any objective facts other than a lock to suggest Martin Poole lacked authority over the trunk, the Court is unwilling to impose any further duty to ask for keys or to ask who owned the car.
 
 
 35
 In short, the Court holds under the limited circumstances of this case the government has shown by a preponderance of the evidence that the appellant assumed the risk his father would consent to a search of the deserted automobile. The officers did not act in a negligent fashion and nothing in the record below indicates they were not motivated by good faith. Objective factors, above all the location and the deserted appearance of the car, pointed to the authority of Martin Poole to consent to the challenged search.
 
 
 36
 The Court also finds that none of the complex rules concerning the 'automobile exception' to the rule against warrantless searches apply. The 1963 Chevrolet lacked a battery and plainly could not be moved under its own power. The policy behind the 'automobile exception' is based on consideration of the mobility of modern vehicles. The Court finds the 'automobile exception' totally inapplicable to a deserted car that cannot be driven without substantial alteration. Lavicky v. Burnett, 758 F.2d 468 (10th Cir. 1985); United States v. Williams, 630 F.2d 1322 (9th Cir. 1980).
 
 2. The Scope of Martin Poole's Consent:
 
 37
 Appellant next contends the officers exceeded the scope of any consent given by Martin Poole in opening the trunk. The findings of the district court as to the voluntariness of a consent to search are binding upon this Court unless clearly erroneous. United States v. Peterson, 524 F.2d 167, 178 (4th Cir. 1975). The Court finds the district court's finding that Martin Poole voluntarily consented to the search to be substantially supported by the evidence. Appellant's contention that Martin Poole consented only to a limited search for locating a missing Marine loader and later a missing police vehicle is without merit. Martin Poole consented to the search of his property on three separate occasions. He never indicated any desire to limit the officers' activity. In particular, the facts indicate Martin Poole signed a written consent to search on August 16, 1984 after the officer showed Mr. Poole the loader and as a wrecking service was removing the loader. On August 21, 1984 Martin Poole again consented to the search of his property after seeing the wrecking service in the process of hauling off the loader several days before. Martin Poole obviously did not intend to limit the officers to exclude the search of the 1963 Chevrolet's truck in view of the highly intrusive searching he had tolerated for several days beforehand.
 
 
 38
 For the foregoing reasons, the district court is affirmed.
 
 
 39
 AFFIRMED.