RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————————

JONATHAN JOSEPH GOOD,
                    *Petitioner-Appellant,*

            *v.*                                         No. 12-1428

MARY BERGHUIS, Warden,
                    *Respondent-Appellee.*

———————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:12-cv-10243—Thomas L. Ludington, District Judge.

Decided and Filed: September 6, 2013

Before: BATCHELDER, Chief Judge; SUTTON, Circuit Judge; HOOD, District
Judge.*

———————————————

## COUNSEL

**ON BRIEF:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Cincinnati, Ohio, for Appellant. David H. Goodkin, OFFICE OF THE MICHIGAN
ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

———————————————

## OPINION

———————————————

SUTTON, Circuit Judge. Currently serving a state sentence in a Michigan
prison, Jonathan Good claims he was convicted based on evidence obtained in violation
of the Fourth (and Fourteenth) Amendment. The state trial court denied his motion to
suppress without holding an evidentiary hearing, and a state appellate court denied his
resulting appeal "for lack of merit in the grounds presented." *People v. Good*, No.
302063 (Mich. Ct. App. Feb. 22, 2011). Good asked for a federal writ of habeas corpus,

———————————————

*The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

the federal district court declined, and a certificate of appealability issued by one of our colleagues brings the case before us.  Good contends that (1) the state court's admission of the evidence violated the exclusionary rule and (2) its failure to hold an evidentiary hearing violated the Due Process Clause.  We affirm.

*Stone v. Powell* in the main prohibits federal habeas corpus review of a state prisoner's Fourth Amendment claim.  428 U.S. 465, 486  (1976).  Two explanations supported the decision.  One, the key purpose of federal habeas corpus is to free innocent prisoners.  But whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty.  *Id.* at 490.  Two, exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution.  Any deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great.  *Id.* at 493.

This prohibition on federal habeas review of exclusionary rule claims applies only to prisoners who received "the opportunity for full and fair consideration" of their claims in state court.  *Id.* at 486.  Good points out that the State never gave him an evidentiary hearing on his suppression motion.  It follows, he says, that he did not get an "opportunity for full and fair consideration" of his Fourth Amendment claim and that he may raise the claim here.

Just what kind of "opportunity" *Powell* contemplates has been the subject of debate.  Our court has been of two (or three) minds about the point.   In the first case, *Bradley v. Cowan*, the trial court "abruptly denied [the suppression motion] without hearing." 561 F.2d 1213, 1215 (6th Cir. 1977).  The panel splintered over whether the state court satisfied the opportunity requirement, with two of the three judges concluding that *Powell* precluded review.  *See id.* at 1215, 1217 (Edwards, J.) (concluding that the lack of a state court hearing makes federal collateral review available but finding any error harmless); *id.* at 1217–18 (Phillips, C.J.) (concluding that *Powell* precluded review); *id.* at 1218 (Weick, J.) (concluding that *Powell* precluded review and finding any error at any rate harmless).  In *Moore v. Cowan*, reported in F.2d before *Bradley* but decided two days after it, the habeas corpus petitioner complained that instead of

reviewing the merits of his Fourth Amendment claim, the state appellate court affirmed on harmless-error grounds. We rejected this argument, subscribing to what has become the majority rule in the circuits—that opportunity means opportunity—and concluding that the state court need do no more "than take cognizance of the constitutional claim and render a decision in light thereof." 560 F.2d 1298, 1302 (6th Cir. 1977). In *Riley v. Gray*, the state appellate court refused to consider the defendant's suppression appeal; it announced a novel procedural rule requiring the defendant to have affirmatively demonstrated his standing to challenge the search in the trial court record—a requirement that the defendant had not met. 674 F.2d 522, 527 (6th Cir. 1982). We held that this "unanticipated and unforeseeable" procedural rule deprived the defendant of a fair opportunity to present his claim to the appellate court. *Id.* at 526–27. But then we added the following unnecessary and unreasoned remark: "[Ohio's rules generally] provide an adequate procedural mechanism for the litigation of fourth-amendment claims because the state affords a litigant an opportunity to raise his claims *in a fact-finding hearing* and on direct appeal of an unfavorable decision." *Id.* at 526 (emphasis added). This statement was dictum; *Riley* is a case about the opportunity at the outset to put the claim before the court, not the subsequent opportunity to get an evidentiary hearing.

Most of the other federal appellate courts have focused on whether the state courts offered the prisoner a procedure for presenting the Fourth Amendment claim. *See, e.g.*, *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) ("[R]eview of fourth amendment claims in habeas petitions [may] be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism . . . ."); *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002) ("[T]here may be instances in which a full and fair opportunity to litigate was denied to a habeas petitioner, but this is not one of them. This is not a case where a structural defect in the system itself prevented [the petitioner's] claim from being heard."); *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978) ("[*Powell* asks only] whether . . . the petitioner was afforded an *opportunity* to raise his Fourth Amendment claims under the then existing state practice."); *Willett v. Lockhart*,

37 F.3d 1265, 1273 (8th Cir. 1994) (en banc) ("[A] Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure . . . .").

Some courts have focused on the adequacy of the procedure, sometimes even the application of the procedure, used by the court to resolve the claim. *See*, *e.g.*, *Anderson v. Calderon*, 232 F.3d 1053, 1068 (9th Cir. 2000) ("[W]e are persuaded on these facts and circumstances that this kind of review falls short of the quality of litigation opportunity described in *Stone*."); *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978) ("'Opportunity for full and fair consideration' includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also includes [a] full and fair evidentiary hearing . . . .") (footnote omitted); *Tukes v. Dugger*, 911 F.2d 508, 514 (11th Cir. 1990) ("The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion . . . that . . . [there is] a *Stone v. Powell* bar to our review of the claim.").

Consistent with *Moore* and with two of the three votes in *Bradley*, we make clear that the *Powell* "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim. *First*, that is what *Powell* said: It focused on the *opportunity* for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant. In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim.

*Second*, this approach accords with traditional federalism and comity principles—considerations that animated *Stone v. Powell* in the first instance and considerations that take center stage whenever evaluating the scope of federal habeas corpus review. *See generally Coleman v. Thompson*, 501 U.S. 722 (1991). Looking into

the adequacy of state opportunities to raise federal claims is a familiar exercise; hence the "adequate" in the doctrine of independent and adequate procedural grounds. *See, e.g.*, *Lee v. Kemna*, 534 U.S. 362 (2002). But it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented. States are independent sovereigns, and the federal government generally speaking should respect their choices about how to adjudicate disputes.

All of that explains why *Powell* tells us not to "assume that there [is] a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States." 428 U.S. at 493 n.35. We must instead presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim—resolving some motions with neither an evidentiary hearing nor an oral argument, some with an oral argument alone, some with both.

*Third*, a different conclusion would be impractical and in the end would raise more questions than answers. It is not feasible to prescribe a uniform set of procedures for every suppression dispute. Take the type of procedure demanded in this case: an evidentiary hearing. The exclusionary rule results in "tens of thousands of contested suppression motions each year," *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3047 (2010) (plurality opinion), and if every one of them prompted a full evidentiary hearing the wheels of justice would jam. Nor is it reasonable to think that an evidentiary hearing is warranted in every case. In some cases, the defendant will not allege a cognizable Fourth Amendment violation. In others, an exception to the exclusionary rule, say for inevitable discovery or for a good faith search, will plainly bring the evidence in. In others, the relevant facts already may be in the record, making an evidentiary hearing unnecessary. In still others, it will be obvious that the suppression motion is frivolous, or that it was made solely for the purpose of delaying the case. Just as the Supreme Court has presumed that a state appellate court normally will have a good reason to deny an appeal summarily, *see Harrington v. Richter*, 131 S. Ct. 770, 784 (2011), so too may we presume that a state trial court often will have a good reason to deny a suppression motion summarily.

*Fourth*, a contrary approach would collapse the hearing inquiry into the merits inquiry. The right to a hearing would turn on how strong the underlying exclusionary claim was, prompting an inquiry of the sort *Stone v. Powell* prohibited in order to determine whether *Stone v. Powell* applied. Our approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?

Applying our test to Good's case is straightforward. Good could, indeed did, present his suppression motion to the state trial court, and the trial court rejected it. He presented it again to the state appellate court, and the appellate court rejected it once more. That suffices to preclude review of the claim through a habeas corpus petition under *Stone v. Powell.*

Good separately argues that the state court's failure to accord him an evidentiary hearing violated his rights under the Due Process Clause. We need not decide whether *Stone v. Powell* also covers Fifth Amendment objections to procedures for resolving suppression motions. Because the Michigan Court of Appeals has already rejected Good's due process argument on the merits, Good may prevail only if he shows that this decision was contrary to or unreasonably applied the National Supreme Court's precedents. 28 U.S.C. § 2254(d)(1). Good cannot meet this burden. He identifies no Supreme Court holding establishing that the Due Process Clause *ever* requires an evidentiary hearing on a Fourth Amendment suppression motion, let alone one establishing a hearing was required under the circumstances of his case.

Good's best case is *Jackson v. Denno*, but even that is far afield. 378 U.S. 368 (1964). *Jackson* held that a defendant sometimes has a right to an actual hearing on a motion to suppress an allegedly involuntary confession. But evidence obtained in violation of the Fourth Amendment is different from confessions obtained in violation of the Fifth. For one thing, a defendant has a personal *constitutional* right to the exclusion of an involuntary confession; the exclusion of the fruits of unlawful searches or seizures by contrast is merely a prudential judicial doctrine. For another, a confession is unreliable if it is involuntary, but tangible evidence remains just as reliable even when

discovered in violation of the Fourth Amendment.  In light of these distinctions, fair-minded jurists could reasonably conclude that *Jackson*'s holding says nothing about whether Good should have received an evidentiary hearing on his Fourth Amendment motion.

For these reasons, we affirm.